FIRST NATIONAL BANK & TRUST COMPANY, trustee,
*v.* FALLIGANT, next friend.

No. 17575. ARGUED SEPTEMBER 10, 1951—DECIDED OCTOBER 10, 1951—
REHEARING DENIED NOVEMBER 16, 1951.

*Hall & Bloch* and *Denmark Groover Jr.,* for plaintiff in error.
*Oliver, Oliver & Davis* and *Martin, Snow & Grant,* contra.

WYATT, Justice. The first question presented is whether or not the trial court committed error in overruling the general demurrer to the petition. We are confronted here with one of the prolific sources of litigation, and with a question that is generally a difficult one. An oral contract by the terms of which a person agrees for a valuable consideration that he will make a will giving property to the other contracting party may be enforced by specific performance in this State. See *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438). The law, however, very properly has laid down some very strict rules governing the enforcement of any contract by specific performance. Specific performance of a contract will not be decreed unless "the contract be definite and specific, based upon a sufficient legal consideration, and the proof of it be strong, clear, and satisfactory." *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E. 295). This court

has many times applied this rule of law. See *Dwight* v. *Jones,* 115 *Ga.* 744 (42 S. E. 48); *Gordon* v. *Spellman,* 148 *Ga.* 394 (92 S. E. 1006); *Wall* v. *Wood,* 174 *Ga.* 508 (163 S. E. 153); and *Brogdon* v. *Hogan,* 191 *Ga.* 647 (13 S. E. 2d, 666). If the contract is one entire contract, and one portion of the contract is indefinite, the entire contract fails. See *O'Rear* v. *Lamb,* 194 *Ga.* 455 (22 S. E. 2d, 74). "The fairness of a contract is usually to be determined as of its date, and the happening of subsequent events within the reasonable contemplation of the parties does not afford a defense." *Whitehead* v. *Dillard,* 178 *Ga.* 714 (174 S. E. 244).

These rules of law have many times been applied and rigidly enforced by this court in cases where the contracting parties are in life. Here we have a case where the lips of one of the contracting parties have been sealed in death. The effect of this contract is to deny to the deceased person the sacred right to dispose of her property by will as she desires. Chief Justice Duckworth speaking for the court in *Salmon* v. *McCrary,* 197 *Ga.* 281 (29 S. E. 2d, 58), so well stated the proposition in cases of this kind that we again quote his language: "While the rule may be said to be a strict or harsh one, it is rightly so. Let it be remembered that one who seeks specific performance of an alleged oral contract as against the estate of a decedent is, in effect, asking that property which would otherwise descend by inheritance, as fixed by the law, or by will as determined by the owner, be decreed to be in him. The law quite properly favors the disposition of property through the channels it has prescribed, and requires strict proof to divert it from those channels. When one dies, and is thus no longer able to manage his own estate, the law undertakes to stand as guardian for it and to see that it is legally disposed of, either to his heirs at law or to his legatees under a will as the case requires. In such confidence we live and die, protected in the safeguards established by the law."

Applying these rules of law to the allegations of the petition in this case, what do we find? The obligation of the deceased, according to the allegations of the petition, at the time the child was born and named was as follows: "Plaintiff's mother informed Mr. and Mrs. Wing that she was expecting a baby in October

of that year. Mrs. Wing immediately stated to plaintiff's mother that, if the expected child was a girl, she wanted plaintiff's mother to name the child after her, saying that, if she would name the child after her, she would provide a college education for her and would also give to the plaintiff all of her jewels at her death." If there is a contract, it must be found in the above-quoted language. The petition alleges that, after the child had been born and named, and consequently the contract, if there was one, had been fully completed, the deceased talked at various times about providing a trust fund of $4000 to educate the child; but, under the allegations of the petition, this could not have been a part of the then completed contract, if there was one. In order to enforce this promise, there must have been a new consideration. It is conceded that there was no new consideration for this promise.

The question then is: Does this alleged contract measure up to the strict rules of law governing suits to specifically perform alleged contracts of this kind? What does "college education" mean? Black's Law Dictionary, p. 164, defines the word "educate" to mean: "To give moral, as well as intellectual and physical instruction." It is common knowledge that there are many kinds of colleges, and that the cost of different college educations varies. Was the college education to be in music, business, academic, professional, or some of the other college educations open to women?

It is insisted that this court in *Moore* v. *Robinson*, 206 *Ga.* 27 (55 S. E. 2d, 711), laid down the proposition that this court will take judicial notice that a college course in Georgia embraces four scholastic years of nine months each. This court simply held in that case that, where the caption of the act referred to a four-year college course of nine months each, the term "four year standard college course" occurring in the body of the act would be construed to mean what was said in the caption. But, even if the contention here insisted upon were true, it would make no difference in this case because "four scholastic years of nine months each" would not determine the kind or cost of the education intended.

From what has been said above, we are compelled to hold that the general demurrer to the petition should have been

sustained. This being true, all that happened thereafter was nugatory.

*Judgment reversed. All the Justices concur.*