67 So.2d 687 (1953)
SIMPSON et al.
v.
IVEY et al.
Supreme Court of Florida. Division A.
October 30, 1953.
*688 Fitzgerald & Wallace and Hoffman, Kemper & Johnson, Miami, for appellants.
Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for appellees.
MATHEWS, Justice.
This case involves an alleged contract to make a will different from the plain and unambiguous language of a will as actually made. The suit was brought for minors (adopted children of a half-sister of John Canfield) by their next friend, under F.S. Chapter 87, F.S.A., claiming as third parties to be beneficiaries of an alleged contract to make a will. The defendants-appellees are the beneficiaries of the will of Mary Adams Canfield, which will was duly probated.
It appears that on May 15, 1948, John Canfield and his wife, Mary Adams Canfield, went together to an attorney and executed their wills. John Canfield's will contained the following:
"Third: I give, devise and bequeath all of my estate to my wife, Mary Adams Canfield, if she shall survive me."
Mary Adams Canfield's will contained the following:
"Fourth: I give, devise and bequeath all of my estate to my husband, John Canfield, if he shall survive me."
Each of the wills contained the provision that if his, or her, spouse did not survive, the property should go into a testamentary trust for the benefit of the two minors who are the appellants here.
John Canfield died on or about March 6, 1949, and Mary Adams Canfield, who survived him, qualified as his executrix and probated his will subsequently. Thereafter she became ill with a disease which proved fatal. While she was in Detroit, Michigan, on May 12, 1949, she executed a codicil to the will which she had executed on May 15, 1948. On June 3, 1949, while in Atlanta, Georgia, she revoked all wills and codicils, and on July 19, 1949, while still in Atlanta, she executed a new will which became her final will. This final will was duly probated in the County Judge's Court of Dade County, Florida, with one Richard B. Ivey as executor. In this last will she did not leave all of the property which she had received under her husband's will to the trust fund for the benefit of the two minors, which according to the terms of her husband's will should only go into the trust fund in the event Mary Adams Canfield did not survive him.
The appellants contend that the two wills of May 15, 1948, were entered into pursuant to an oral contract between John Canfield and Mary Adams Canfield, under which each agreed that his, or her property should go to the other, and that the survivor would devote the Canfield property to the benefit of the appellants by the creation of a trust; that such oral testamentary contract became an executed one by virtue of the execution of the two wills on May 15, 1948, in the same office and before the same witnesses, and that Mary Adams Canfield was not at liberty after that date to change her will. It is further urged that Mary Adams Canfield accepted the property by virtue of the will and was not *689 at liberty to act contrary to the alleged oral agreement.
Standing alone the will of John Canfield left his property to his wife, Mary Adams Canfield, in fee simple and without any strings or limitations attached to it.
The burden of proof was upon the appellants and in order to overcome the will as written, executed and probated under an alleged oral contract, it was necessary that the appellants establish such oral contract by clear and convincing testimony. See Miller v. Carr, 137 Fla. 114, 188 So. 103; First National Bank & Trust Co. v. Falligant, 208 Ga. 479, 67 S.E.2d 473.
In the case of Hayes v. Jones, 122 Fla. 67, 164 So. 841, 845, the wills went much further than the wills involved in the case at bar, in that a desire was expressed in each will to give the property which remained after the death of the survivor to certain institutions. This Court stated:
"The joint will provided that:
"`The survivor shall have, absolutely and in fee simple, all of the property and estate of every nature and character, wherever located, of the one whose death shall first occur.'
"The succeeding provision that: `After the death of the survivor, it is the desire of each of us to give, devise and bequeath, out of the estate left after such survivor's death, to certain persons and institutions, herein named, the respective amounts hereinafter mentioned, provided such remaining estate be sufficient to pay same,' etc., does not constitute a contract between the husband and wife and does not create a trust in favor of the beneficiaries named in the husband's bequests; and the subsequent assignment by the husband to the wife of his property covered by the joint will left no property of his upon which his bequests in the joint will could operate. If the homestead was held by the entireties, it passed to the surviving wife and was not affected by the will."
In the case at bar the matter was referred to a master and in an attempt to establish the alleged contract voluminous testimony was taken. In the report and findings of the master we find the following:
"* * * the factual matter of the execution of the will does not in itself create a contract, * * *."
The master then went into and discussed the evidence in order to determine whether or not the appellants had met the burden of proof and whether the testimony was sufficient to establish the alleged oral contract for the disposition of the property, notwithstanding the plain provisions of the will.
Some of the testimony before the master was by way of deposition and some was the result of the witnesses appearing before the master. The one person best qualified to testify in the case was the person who drew the wills and prior thereto had had many consultations with the parties executing the wills. His credibility was questioned because of some contingent interest with reference to legal matters concerning the property involved. The master determined this question of credibility of witnesses who appeared before him and after making his findings of fact, recommended a decree to the effect that there was not a testamentary contract between John Canfield and Mary Adams Canfield.
The final decree by the able Chancellor, among other things, contains the following:
"1. That Plaintiffs' and defendants' exceptions to the Master's Report of findings and recommendations are hereby overruled;
"2. The Master's Report of findings and recommendations is hereby approved and confirmed in every respect;
"3. This Court finds and it is hereby decreed that John Canfield and Mary Adams Canfield, his wife, did not enter into a testamentary contract to make or carry out reciprocal wills."
*690 No useful purpose would be served by repeating the testimony. It did not measure up to the rule. It was not clear and convincing. There was not only substantial testimony upon which the findings and recommendations of the master were based and the final decree entered, but the weight of the testimony supported such findings and decree.
Having reached this conclusion it is unnecessary to consider or pass upon other assignments of error.
Affirmed.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.