S96G1535. L & B CONSTRUCTION COMPANY, INC. et al.
v. RAGAN ENTERPRISES, INC.
(482 SE2d 279)

SEARS, Justice.

We granted certiorari in this case in order (1) to review the judicial construction of a "flow down" clause purported to incorporate a "no-damages-for-delay" provision from a general contract into a subcontract, and (2) to determine whether that "flow down clause" barred a subcontractor's action for delay damages when the subcontract also provided that "only an extension of time" would be accorded the subcontractor in the event of contractor-caused delay. We determine that, under the unambiguous terms of the general and

subcontracts at issue here, the "flow down clause" incorporated the "no-damages-for-delay" provision into the subcontract, barring the subcontractor's action against the contractor for delay damages. Therefore, we reverse the contrary ruling by the Court of Appeals.

Appellant L & B Construction, Inc. ("L & B") was the general contractor on a construction project owned by the State of Georgia. Appellee Ragan Enterprises, Inc. ("REI") was the electrical subcontractor on the construction project. The general contract between L & B and the State contained the following relevant clauses:

> The contractor [L & B] expressly agrees that *the contractor's sole remedy for . . . delay shall be an extension of contract time and that the contractor shall make no demand for damages or extended overhead.*

> The Contractor *shall not be entitled to payment or compensation of any kind* from the Owner for direct, indirect, or impact damages . . . *arising because of any hindrance or delay* from any cause whatsoever [except those involving fraud and bad faith].

(Emphasis supplied.)

The subcontract entered between L & B and REI contained these relevant clauses:

> Should subcontractor be delayed in his work by contractor then contractor shall owe subcontractor therefor *only an extension of time for completion equal to the delay caused* and then only if a written claim for delay is made to the contractor within forty-eight hours from the time of the beginning of the delay.

> The contractor [L & B] has heretofore entered into a General Contract with [the Owner] . . . and *which is now made a part of this Sub-contract insofar as [it] appl[ies].*

> *Contractor shall have the same rights and privileges as against the Sub-contractor herein as the Owner in the General Contract has against the Contractor.* Sub-contractor acknowledges that he has read the General Contract and all plans and specifications and is familiar therewith and agrees to comply with and perform all provisions thereof applicable to Sub-contractor. (Emphasis supplied.)

> The Sub-contractor agrees to be bound to the contractor by

the terms of the contract documents and *assume toward the contractor all of the obligations and responsibilities that the contractor by aforesaid document assumes toward the Owner.*

REI filed suit against L & B and its surety for breach of contract and resulting damages due to a two-year delay in the project caused by L & B. L & B defended on grounds that REI's suit was barred by the "no-damages-for-delay" provision in the subcontract. The superior court agreed, and on cross-motions for summary judgment, denied REI's motion and granted L & B's motion. The Court of Appeals reversed, and instructed the superior court to enter summary judgment in favor of REI.[1]

In its opinion, the Court of Appeals concluded that the clause in the subcontract that L & B had argued addressed damages for delay merely provided for a time extension in the event of delay, did not address delay damages, and therefore did not bar REI's recovery. Specifically, the Court of Appeals held that the clause in the subcontract stating that, in the event of delay caused by L & B, L & B would owe REI "only an extension of time for completion equal to the delay caused" was ambiguous as to whether the term "only" modified (1) the length of the extension of time given in the event of delay, or (2) the scope of permitted remedies in the event of delay.[2] Because exculpatory clauses must be unambiguous, and because any ambiguities in a contract must be construed against the drafter (in this case L & B), the Court of Appeals concluded that this clause did not bar REI's action for delay damages against L & B.[3] In a later division, the Court of Appeals appears to have resolved this ambiguity for itself by stating that within this clause, the term "only" simply modifies the length of any extension of time that would be permitted in the event of delay, and therefore does not limit the scope of remedies available to the subcontractor for delays caused by the general contractor.[4]

As for the general contract, the Court of Appeals found that by its clear terms, it did affirmatively bar an action for delay damages brought by the general contractor against the project's owner, and therefore conflicted with the subcontract. For that reason, the Court of Appeals refused to construe the "flow down" clause as incorporating the "no-damages-for-delay" provision from the general contract in to the subcontract.[5]

---

[1] *Ragan Enterprises v. L & B Constr. Co.,* 221 Ga. App. 543 (472 SE2d 88) (1996).
[2] 221 Ga. App. at 543.
[3] Id.
[4] 221 Ga. App. at 544.
[5] Id.

This Court granted certiorari in order to review the propriety of this ruling. For the reasons explained below, we reverse.

The law in Georgia has long recognized the legitimacy of contractual provisions that impose on a subcontractor some or all of the contractor's obligations to the owner, commonly referred to as "flow down clauses."[6] "Flow down clauses" in construction contracts are effective to impose on a subcontractor the incorporated duties as set forth in the general contract.[7] When a "flow down" clause is used in a subcontract, the subcontract need not contain additional language of incorporation in order to impose on a subcontractor duties owed by the general contractor to the project owner.[8]

In this matter, the "flow down clause" in the subcontract states that the "contractor shall have the same rights and privileges as against the Sub-contractor . . . as the Owner in the General Contract has against the Contractor." The only legitimate meaning of this clause is to allow the general contractor to invoke against the subcontractor all of the rights and defenses that the project owner would be able to invoke against the general contractor under the general contract. As recognized by the Court of Appeals, the rights and defenses available to the project owner against the general contractor under the general contract clearly and unambiguously bar the recovery of delay damages.

In addition to the "flow down clause," the subcontract also states that "the Sub-contractor agrees to . . . assume toward the contractor all of the obligations and responsibilities that the contractor by [the general contract] assumes toward the [project] Owner." Thus, even though the "flow down clause" is unambiguous, this second clause removes any conceivable doubt that the subcontractor is bound to the general contractor in the same manner as the latter is bound to the project owner. Because the general contract accords the project owner protection from an action brought by the general contractor for delay damages, it necessarily follows that the subcontract accords the same protection to the general contractor vis a vis the subcontractor.

Concerning the subcontract's provision that, in the event of delay caused by the contractor, the "contractor shall owe subcontractor

---

[6] See *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 390 (367 SE2d 278) (1988); *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 225 (338 SE2d 733) (1985); *Hartline-Thomas, Inc. v. Arthur Pew Constr. Co.*, 151 Ga. App. 598, 599 (260 SE2d 744) (1979).

[7] *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 716-717 (234 SE2d 363) (1977).

[8] *Consolidated Freightways Corp. v. Syncroflo*, 164 Ga. App. 275, 277 (294 SE2d 643) (1982) (" 'It is not important in what language reference is made [in a flow down clause]; it is certainly enough if a plain reference is made by a document signed by the party to be charged, whatever its nature, to any other writing.' "); 4 Williston on Contracts 901, § 628 (3rd ed. 1991).

therefor only an extension of time for completion equal to the delay," for the reasons explained below, we find the unambiguous and plain meaning of this clause to be that in the event of delay, the subcontractor's exclusive remedy is an extension of time for completion of its work, equal to the amount of the delay. Thus, this clause is entirely consistent with the effect of the "flow down clause" discussed above.

It is axiomatic that contractual terms are construed according to their "usual and common signification,"[9] and in construing contracts, "the rules of grammatical construction usually govern."[10] The word "only," according to its usual signification, means "solely" or "exclusively."[11] Because in this clause, the word "only" directly precedes the phrase "an extension of time," it is evident that L & B and REI agreed that an extension of time would be REI's exclusive remedy in the event of delay caused by L & B. The Court of Appeals erred by construing this contractual clause to read the word "only" as modifying not the phrase it directly precedes, "an extension of time," but rather the later phrase "equal to the delay caused." Under the accepted rules of grammatical construction, modifiers such as "only" are placed next to the word or phrase that they modify.[12] Thus, the phrase "should subcontractor be delayed in his work by contractor then contractor shall owe subcontractor therefor only an extension of time for completion equal to the delay," plainly limits the remedies available to the subcontractor to "only an extension of time." Contrary to the Court of Appeals' opinion, once the statutory rules of contract construction are applied properly, there is no ambiguity associated with the plain meaning of the phrase. Furthermore, as noted above, this construction of the phrase is entirely consistent with the effect of the "flow down clause" on the subcontract, and thus harmonizes all of the subcontract's provisions.[13] Hence, the Court of Appeals erred by not enforcing the "flow down clause" and its incorporation of the "no-damages-for-delay" provision from the general contract into the subcontract.

*Judgment reversed. All the Justices concur.*

---

[9] OCGA § 13-2-2 (2) (1982).

[10] Id. § 13-2-2 (6).

[11] Webster's Third New International Dictionary, p. 1577 (1976).

[12] Strunk, Jr. & White, The Elements of Style, p. 30 (3rd ed. 1979); O'Connor, Woe is I — The Grammarphobe's Guide to Better English in Plain English, p. 121 (1996).

[13] See *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (34 SE2d 839) (1945). This construction of the clause also is consistent with another clause discussed by the Court of Appeals, which exculpates the general contractor for delay damages caused by others. See 221 Ga. App. at 544. Under this construction, with limited room for exception, the contractor will not be liable for delay damages.

DECIDED MARCH 3, 1997 —
RECONSIDERATION DENIED APRIL 4, 1997.

*Bovis, Kyle & Burch, John V. Burch,* for appellants.
*Smith, Howard & Ajax, Larry S. McReynolds, Scott D. Cahalan,* for appellee.
*Bondurant, Mixson & Elmore, Jill A. Pryor, Jane E. Fahey,* amicus curiae.