## A01A0342. BOOKER v. HALL.
## A01A0343. BREMER et al. v. HALL.
### (548 SE2d 391)

ELDRIDGE, Judge.

In Case Nos. A01A0342 and A01A0343, appellants-defendants Randall S. Booker and William J. Bremer, as executor under the last will and testament of Mary J. Bremer, his mother, respectively, appeal from the superior court's decree in equity setting aside a deed by which Bremer sold certain oceanfront property to Booker in violation of an alleged prior right of first refusal in favor of appellee-plaintiff Stephen R. Hall. By its decree, the superior court further granted Hall specific performance of the right of first refusal as to the property in issue located on Tybee Island's Strand, which Hall exercised to obtain title to Lots 4 and 5. Defendants first filed the instant appeals in the Supreme Court of Georgia. On October 2, 2000, the Supreme Court transferred each appeal to this Court in that the grant of equitable relief was merely ancillary to underlying issues of law, i.e., whether the trial court properly construed a contract for the sale of land. See *Lee v. Green Land Co.*, 272 Ga. 107 (527 SE2d 204) (2000). Pertinently the facts are as follows.

On March 23, 1994, Bremer acting as attorney-in-fact for his mother, Mary Bremer, entered into a land sales contract with Hall ("contract"). Under the contract, Bremer sold Lot 3 of Beach Lot 75 in the Strand to Hall. The purchase price was $135,000 and included the cottage on the property, known as the "Old Bremer House." Mary Bremer also owned Lots 4 and 5 of Beach Lot 75. These lots were located immediately to the east of Lot 3, separating the Old Bremer House from the Atlantic Ocean. As part of the sales transaction, Hall sought[1] and Bremer gave a contractual future purchase right in Lots 4 and 5 or, in the event of inability to exercise such right of purchase,

---

[1] The superior court found that at Bremer's request Hall added Special Stipulations 4, 5, and 6 to the contract in his own handwriting at closing of the sales agreement, having "dictated" the stipulations he wanted in the contract, Special Stipulations 1-3, to his attorney the previous day.

a share in profits over $225,000 upon a sale of the lots to a third party or parties. Pertinently, the operable language was as follows:

> SPECIAL STIPULATIONS: The following special stipulations and any addenda, if in conflict with any printed matter in this Agreement, shall control and take precedence over such printed matter. The following provisions will survive the closing on Lot 3/Old Bremer House and remain in effect as option to purchase Lots 1 and 2[2] as follows:
> [a. Hall's stipulations.]
> 1. Purchaser(s) shall have the first right of refusal on the purchase of both Lots [4] and [5] (hereinafter referred to as "front lots"); 2. If a contract for sale containing an offer on the front lots is offered to seller prior to two years after the closing on Lot 3, then the purchaser(s) shall at that time have the option to purchase said lot or lots for some price equal or exceeding the offer received by the seller at that time. The payments for said lot or lots, however, shall be extended over a period of two years following the closing between purchaser and seller on the front lots. If at that time the purchaser(s) is unable to match or exceed the offer received by the seller on either or both front lots and the seller sells both lots for a sum greater than $225,000.00, then seller will split the excess over and above $225,000.00 with the purchaser. If the seller sells both Lots [4] and [5] on separate occasions, then the seller will still pay the purchaser(s) the sum received for both lots in excess of $225,000.00, this amount being due on the sale of the last lot sold; 3. Purchaser(s) shall have an option to purchase both Lots [4] and [5] at some later time for a reasonable sum. Purchaser(s) will pay $500.00 to retain said option at the time of the closing of Lot 3, 12th Terrace[;]
> [b. Bremer's Stipulations.]
> 4. Furniture does not convey with the house[;] 5. Seller will have first right of refusal when purchaser sells house[; and] 6. Purchaser has right to maintain and have access [through] Lots [4] and [5].

On March 2, 1998, Bremer, now acting on behalf of his mother's estate as executor, conveyed Lots 4 and 5 to Booker without first giving Hall the opportunity to purchase the lots at the same price

---

[2] Upon the consent of the parties, the superior court equitably reformed the 1994 sales contract to show Lots 4 and 5 as the subject matter of the Special Stipulations, such lots having been misdesignated as Lots 1 and 2 in the Bremer/Hall contract.

offered by Booker. Hall filed the instant lawsuit nine days after conveyance of title. Booker had already begun clearing Lots 4 and 5 for building. The superior court denied the motions for summary judgment of the parties, those of Bremer and Booker predicated on claims that Special Stipulation 1 ("right of first refusal") of the contract was unenforceable for violation of the Statute of Frauds, indefiniteness as to the essential term in contract of price, and expiration of the right of first refusal which must be read as limited to two years. Subsequently, the superior court impaneled an advisory jury in equity, projecting a trifurcated trial. In the first round of the trial, the jury heard parol evidence and was asked to determine if "Hall had proven, by a preponderance of the evidence, (1) the essential elements of a contract, and (2) that the right of first refusal in Stipulation 1 is not restricted to two years." The jury returned its special verdict answering, "Yes." After conducting a second round of trial without a jury, the superior court issued its decree, finding that the right of first refusal was not unenforceable as subject to a two-year time limitation or for its failure to set out the essential term of price therein. *Held*:

1. (a) Among the claims of error asserted in both cases, Bremer contends that the superior court erred in failing to find the contract unenforceable as too vague and indefinite as to essential terms. In Georgia, it is settled that an "agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." (Citations and punctuation omitted.) *Southern Med. Corp. v. Liberty Mut. Ins. Co.*, 216 Ga. App. 289, 291 (2) (454 SE2d 180) (1995). We agree and further conclude that reversal would otherwise be required because: (1) the contract was plain and unambiguous insofar as Special Stipulation 1 thereof afforded Hall a right of first refusal limited to two years duration, and (2) even if the right of first refusal were deemed ambiguous, Hall having drafted Special Stipulations 1-3, any ambiguity would have to be construed against him and the rules of construction requiring all the special stipulations read together.

Hall correctly points to *Radio Webs v. Tele-Media Corp.*, 249 Ga. 598, 599, n. 2 (292 SE2d 712) (1982) for the proposition that "[w]here no price term is stated when the right [of first refusal] is granted, the offer of the third party supplies the terms under which the right of first refusal may be exercised. [Cit.]" See also *Shiver v. Benton*, 251 Ga. 284, 285 (1) (304 SE2d 903) (1983); *Bouy, Hall &c. Assoc. v. Savannah Airport Comm.*, 256 Ga. 181-182 (1) (345 SE2d 349) (1986). However, that price and payment terms may thus be "supplied" at a future date is not to say that the term triggering a right of first refusal may be supplied as well because the condition precedent to the right to purchase must be stated in writing in the contract

with sufficient specificity to be enforced by specific performance, which includes the time that such option shall be in force and effect.

> A preemptive right [or right of first refusal] merely sets a requirement that *when the owner decides to sell* the person holding the preemptive right must be offered the opportunity to buy. (Emphasis supplied.) See generally 1A Corbin, Corbin on Contracts, § 261.

*Hasty v. Health Svc. Centers*, 258 Ga. 625, 626 (373 SE2d 356) (1988). In Georgia, the law makes clear that if a right of first refusal is to be complete, the parties must supply the triggering term by agreement that informs the parties when such right is operative. Inherent vagueness in what a decision to sell means can be illustrated by cases showing that the language chosen is outcome determinative of enforceability. Compare id. (right of first refusal triggered upon execution of option contract, the parties having agreed that this would occur when landlord "otherwise" wanted to sell); *Hewatt v. Leppert*, 259 Ga. 112, 115 (376 SE2d 883) (1989) (option contract's execution did not trigger the right of first refusal, the parties having agreed that the landlord's receipt of an acceptable offer would trigger the right).

The right of first refusal Hall seeks to enforce is devoid of any triggering term. As such, it is no more than an unenforceable agreement to agree in the future. "No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced." (Citations and punctuation omitted.) *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992).

(b) The foregoing notwithstanding, Hall's right of first refusal is unenforceable because the plain and unambiguous meaning of the right is limited to two years duration, and the right expired prior to the time Bremer sold Booker Lots 4 and 5 in the instant case. "The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3. The construction of a contract is a three-step process. First, the construction of a contract presents a question of law for the court. If no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. See generally *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986); *Karlan, Inc. v. King*, 202 Ga. App. 713, 715 (1) (415 SE2d 319) (1992). If the terms of the contract are clear and unambiguous, the court must look to the contract alone to find the intention of the parties. *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, 194 Ga. App. 169, 173 (3) (390 SE2d 257) (1990). Secondly, if ambiguity is determined to exist, the existence or nonexis-

tence thereof is itself a question of law for the court. "A jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the . . . statutory rules of construction." *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989). Contractual ambiguity is not indicated upon encountering difficulty in construing a contract, unless after the pertinent rules of construction are applied, among them the requirement that a contract be construed as a whole, see OCGA § 13-2-2 (4); *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993), and uncertainty remains as to which of two or more possible meanings represents the true intention of the parties. *Crooks v. Crim*, 159 Ga. App. 745 (285 SE2d 84) (1981); *Sims' Crane Svc. v. Reliance Ins. Co.*, 514 FSupp. 1033 (S.D. Ga. 1981), aff'd, 667 F2d 30 (11th Cir. 1982).

Consistent with the rule that the whole contract should be looked to in arriving at the construction of any part of a contract, OCGA § 13-2-2 (4), Hall chose preambular language which introduced his special stipulations by providing for their collective survival after closing on Lot 3 as an "option to purchase" Lots 4 and 5. Thus, construing Special Stipulations 1 and 2 together, the right of first refusal had a two-year duration. Thereafter, he set out his special stipulations in seriatim. That Special Stipulation 1, the bare bones right of first refusal in issue, and Special Stipulation 2, a stipulation comprehensively providing the price, payment, duration, and triggering terms lacking in Stipulation 1, were separated by a semicolon rather than a period is a clear indication that the parties intended that the latter should modify the former. Moreover, Stipulation 1 is left superfluous and without apparent meaning if read as a right of first refusal not limited in duration in that Special Stipulation 3[3] provides Hall an option to purchase at "some later time," presumably after the passage of two years. It would be unreasonable to read the right of first refusal created by Special Stipulation 1 as overlapping an option to purchase. Unlike the right of first refusal, during its term an option to purchase permits its holder to force sale even if the subject property is not otherwise on the market. Compare *Hewatt v. Leppert*, supra at 114 (option holder may force sale at any time during option); *U. S. Enterprises v. Mikado Custom Tailors*, 250 Ga. 415, 416 (297 SE2d 290) (1982) (right of first refusal grants no option). Under these circumstances, the superior court erred in finding as a matter of law that Hall's right of first refusal was ambiguous as susceptible to two separate meanings and in denying the parties'

---

[3] Hall correctly conceded below that Special Stipulation 3 is unenforceable under Georgia law and did not rely on it insofar as he sought specific performance of the right of first refusal.

motions for summary judgment in part upon the finding that "the mere existence of [the right of first refusal which Bremer sought in Hall's property by his Special Stipulation 5] raises the possibility that the term 'right of first refusal' was meaningful to the parties at the time of contracting."

Absent the two-year time period, a reasonable time period would be set by the rule of contract enforcement. See *Shiver v. Benton*, supra at 287-288 (1); see also *Hinson v. Roberts*, 256 Ga. 396, 398 (2) (349 SE2d 454) (1986).

(c) Further, it is undisputed that Hall drafted Special Stipulations 1 through 3. Having found such stipulations ambiguous as a matter of law, the superior court also erred in failing to construe such ambiguity in favor of nondrafter Bremer. OCGA § 13-2-2 (5); *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990). Hall argues, however, that the intent of the parties as to the duration of his right of first refusal should be construed in light of OCGA § 13-2-4.[4] Pretermitting whether OCGA § 13-2-4 is a specific rule of construction which should take precedence[5] over the general rule that contracts should be construed against the draftsman, *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586, 593 (4) (337 SE2d 29) (1985), the record does not support Hall's claim by his brief on appeal that he communicated his understanding of Special Stipulation 1 as unlimited by time to Bremer or of Bremer's acquiescence therein by silence. Rather the record shows that the matter was "never discussed, ever." The superior court's finding of fact to the contrary was likewise error. "[A] judge's findings of fact will not be disturbed on appeal as long as there is any evidence to support those findings." *Hughes v. Cobb County*, 264 Ga. 128, 130 (1) (441 SE2d 406) (1994).

Finally, since the writing at issue lacks the elements needed to create a binding and enforceable contract, neither specific performance nor damages were obtainable based thereon. *Stribling v. Ailion*, 223 Ga. 662, 664 (2) (157 SE2d 427) (1967); see also *First Nat. Bank &c. Co. v. Falligant*, 208 Ga. 479, 480-481 (67 SE2d 473) (1951) (specific performance of a contract will not be decreed if only one portion thereof is uncertain and indefinite).

2. In light of our disposition in Division 1, we need not address the remaining enumerations of error.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

---

[4] OCGA § 13-2-4 provides that "[t]he intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning."

[5] In the event of conflict, a specific rule of construction takes precedence over a general rule of construction. *Alexander v. Steining*, 197 Ga. App. 328, 331 (2) (398 SE2d 390) (1990).

DECIDED MARCH 15, 2001 — 

*Ronald C. Berry*, for appellant (case no. A01A0342).
*Portman & Felser, Barnard M. Portman, Paul H. Felser, David A. Webster*, for appellants (case no. A01A0343).
*Hunter, Maclean, Exley & Dunn, John M. Tatum*, for appellee.