## A02A0745. YARGUS v. SMITH et al.
### (562 SE2d 371)

ELDRIDGE, Judge.

Following a bench trial, John W. Yargus, defendant to this equitable action for specific performance, appeals from an adverse judgment by the superior court, finding that this was an appropriate case for specific performance and that the plaintiffs, Rebekah J. and Eugene F. Smith, were entitled to have title to the house at 3435 Canadian Way, Tucker, DeKalb County, conveyed to them pursuant to the real estate sales contract. The issue underlying the equity action is one of contract construction; therefore, it is proper for this Court to resolve this case based upon contract construction. See *Lee v. Green Land Co.*, 272 Ga. 107 (527 SE2d 204) (2000).

The defendant contended that the closing was not held at the time provided under the terms of the contract and that the contract expired by the failure to close on such date. The plaintiffs contended that they unilaterally extended the time to close under the contract terms so that the defendant's repair of the defects would be completed prior to closing as provided under the contract and so that the loan documents could be completely processed. Finding that there was no legal error or abuse of discretion, we affirm.

On March 29, 2000, Yargus and the Smiths entered into a purchase and sale agreement for Yargus' home at 3435 Canadian Way. The written agreement called for a closing on April 20, 2000, which was typed, but under the terms of the agreement, the Smiths alone extended the closing to April 26, 2000, in order to obtain the loan documentation and because the inspection turned up defects in the house that required repairs prior to closing. Yargus, through his agent who had a power of attorney, failed and refused to close or to attend the closing on the new closing date, contending that the contract closing date had expired without the parties closing the transfer of the property. The Smiths sued for specific performance as well as damages.

The defendant contends that the trial court erred in entering a judgment of specific performance for the plaintiffs. We do not agree.

The printed standard sale-purchase contract, in a printed Section 4 of the agreement, contained a standard unilateral extension of the closing for seven days to remedy either (1) that the mortgage cannot close before the closing date or (2) that the seller fails to satisfy a valid title objection prior to the closing date; otherwise, the contract

provided that all the parties in writing must agree to any extension of the closing date. To the extent that there existed an inability to obtain the completion of the loan documents prior to the April 20 closing date, such satisfied this condition for a unilateral extension.

The defendant contends that there was no evidence before the trial court that there was any delay in closing the loan and that the trial court allowed the unilateral extension based upon the need to repair. Therefore, we will construe the contract regarding an extension for repair. In construing the extension provisions of the contract, we must look to the four corners of the document. Any apparent ambiguity should be resolved under the rules of contract construction without resorting to parol or other evidence, unless there is no other way to resolve the apparent ambiguity and conflict in the contract.

A standard printed Section 8 A provided for inspection by the purchaser and for repair obligation by the seller after the inspection report had been submitted. The contract was dated March 29, 2000. The contract provided that no later than April 8, 2000, ten days after the execution of the agreement, which was a typed number, plaintiffs had to submit to the defendant a copy of the inspection report and written amendment to the agreement requesting the repair of specific defects. Until April 21, 2000, thirteen days after the report and amendment, which was a typed number, defendant had to repair the defects or to make a counter repair proposal as a new term to the agreement, which was one day after the contract closing date. Neither party could terminate the agreement during such "Repair Resolution Period," which ended on April 21, after the contract closing date. If the parties did not reach an agreement on what repairs had to be made by written agreement, then the plaintiffs had to either accept the defendant's last counteroffer of repair or accept the property "as is," and give notice of such decision within three days of the end of the repair period, which was no later than April 24 and which was four days after the contract closing date. If the plaintiffs failed to give timely notice, then the agreement was terminated on April 25. Critical to this action for specific performance was the standard printed term that "[a]ll agreed-upon repairs and replacements shall be completed in a good workmanlike manner prior to closing" and that neither party could terminate the agreement during the "Repair Resolution Period." All specific time periods as well as the closing date were typed into the printed contract except for the printed notice period.

Yargus refused to make repairs when the inspection was completed and made no counteroffer, because he felt that he had agreed to too low a purchase price and had a higher backup contract. The defendant ultimately paid for the repairs after the closing date had expired. Thus, at the end of the maximum "Repair Resolution

Period," plaintiffs had to give notice within three days that they took the house "as is," which they did; such "Repair Resolution Period" and notice under the contract ended not on April 20 but on April 24. However, in determining the intent of the parties under the terms of the contract, such facts do not control, since it is not what they did after the execution of the contract but what they expressed as their intent under the contract that is determinative in construing the intent under the contract as to the extension provisions.

Thus, there existed apparent ambiguities and conflicts in the contract's standard printed terms and the typed time periods, because the inspection and repair terms could not be completed prior to the typed contract closing date. The defendant's real estate agent made errors in setting the closing date and setting out the various time periods so that they should expire prior to the closing date. However, if the maximum typed days under the contract to inspect, to negotiate repairs, and to give notice are computed, then the notice would occur on April 24, after the April 20 closing date. Therefore, the closing date of April 20 conflicts with the requirement that repairs be completed in a workmanlike fashion prior to closing, if that was the correct closing date.

Further, the contract does not allow either party to frustrate and terminate the contract prior to the end of the 13-day "Repair Resolution Period," which did not end until after the original contract closing date. All time in days, including the closing date, were typed by the defendant's agent, having equal dignity, and such computation by the drafter, defendant's real estate agent, was flawed, with 22 days given to close after execution of the contract and with 26 days given to inspect, report, negotiate, repair, and give notice under the same contract. When an unskillfully drafted contract in computing time to perform the duties of the parties must be construed by the court to resolve any conflict in terms, it is the court's duty to discover and to give effect to the intent of the parties in the contract. See generally *Skinner v. Bearden*, 77 Ga. App. 325, 326-327 (1) (48 SE2d 574) (1948).

If the defendant's construction of the contract is followed, then he would be allowed to frustrate the purpose of the contract by delaying the completion of repairs that he could be obligated to make under a repair resolution amendment beyond the contract closing date, by refusing to agree to a contract extension, and could keep the earnest money, giving no effect to the printed repair provisions of the contract, which are entitled to equal effect to carry out the intent of the parties. Such is an unreasonable construction of the contract, which would defeat the contract on its face.

The unilaterally permitted extensions of the closing date for seven days under the contract are primarily for the protection of the

plaintiffs and not the defendant, although the defendant could evoke them to allow the contract to be continued into effect until such problems are resolved either by the purchaser or by the seller. Likewise, the contract term, requiring the completion of all agreed-upon repairs prior to closing, is for the sole protection of the plaintiffs. Therefore, impliedly under the contract, there must be an automatic extension of the closing date until not only the agreed-upon repairs are completed, but also until such repairs are made in a workmanlike fashion; otherwise, the failure to repair would defeat the contract. To otherwise construe the contract would have repairs outside the closing date and allow the seller to frustrate the contract at his will by insisting upon the closing on the contract date.

A conflict in the express terms of a contract, when reasonably construed, creates an apparent ambiguity for the trial court to resolve as a matter of law, but the trial court must seek to resolve such apparent ambiguity without the intervention of a jury through the application of the rules of construction. *Booker v. Hall*, 248 Ga. App. 639, 642-643 (548 SE2d 391) (2001); *Crooks v. Crim*, 159 Ga. App. 745, 748 (285 SE2d 84) (1981). The entire contract must be considered in construing the intent of the parties. OCGA § 13-2-2 (4); *Booker v. Hall*, supra at 643; see also *Hull v. Lewis*, 180 Ga. 721, hn. 1 (180 SE 599) (1935). The cardinal rule of contract construction is to determine the intent of the parties as expressed within the four corners of the written agreement. OCGA § 13-2-2; *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975). The construction of the contract which allows the contract to be upheld is preferred. *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987); *Burch v. Ragan*, 92 Ga. App. 605, 607 (89 SE2d 541) (1955). All terms should be given effect if possible. OCGA § 13-2-2 (4); *Bd. of Regents v. A. B. & E., Inc.*, supra at 675; *Burch v. Ragan*, supra at 607. Since the typed closing date conflicts with the typed inspection repair negotiation requirements, and the repair negotiation period conflicts with the printed two unilateral extension provisions, then the printed two unilateral extension provisions must yield to the clear intent that closing could not take place until repairs are completed in a workmanlike fashion. OCGA § 13-2-2 (7); *Quinlan v. Bell*, 189 Ga. App. 8, 9 (374 SE2d 823) (1988); *Hodsdon v. Whitworth*, 153 Ga. App. 783, 786-787 (1) (266 SE2d 561) (1980); *Capital Wall Paper Co. v. Callan Court Co.*, 38 Ga. App. 428 (1) (144 SE 135) (1928). Since the printed and typed contract was formulated by the defendant, then the agreement must be construed most strongly against him. *L & B Constr. Co. v. Ragan Enterprises*, 267 Ga. 809, 811 (482 SE2d 279) (1997); *Simmerman v. Dept. of Transp.*, 167 Ga. App. 383, 386 (1) (307 SE2d 4) (1983). Further, while the contract contained a printed "time is of the essence" clause, the typed time periods to

inspect and repair prior to closing are controlling and were not exceeded, because closing is conditioned upon the completion of the repair obligation as provided for in the contract. See generally *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 710-711 (1) (507 SE2d 493) (1998). Therefore, the trial court in seeking to determine the intent of the parties under the contract properly used the rules of construction and construed the contract to give all terms effect; the trial court found that, under the contract terms when the ambiguity was resolved, the plaintiffs could unilaterally in writing extend the closing date, just as in the case of loan delays or title defects.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 8, 2002 —
RECONSIDERATION DENIED MARCH 20, 2002 — ▮▮▮▮▮▮▮

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Peter L. Lublin, Monica K. Gilroy*, for appellant.

*Weissman, Nowack, Curry & Wilco, Ned Blumenthal, John C. Pennington, Ernest M. Moran*, for appellees.