A02A2162. THOMAS v. B & I LENDING, LLC et al.
(581 SE2d 631)

ADAMS, Judge.

Michael R. Thomas, the founder and chief executive officer of a small company, became involved in a dispute with the company and its majority owner about his management of the company. To buy time to solve their differences and possibly to sell the company, the parties entered into a "Standstill Agreement," which provided that no party would initiate litigation through a certain date and that, should litigation become necessary, the company had the right to file suit first, in Delaware. After the standstill date passed, Thomas filed suit first, in Georgia, without notice to the company. The issue presented is whether the company's right to file suit first survived the term of the Standstill Agreement.

The company Thomas founded is B & I Lending, LLC, a Delaware limited liability company. Hovde Acquisitions, LLC (HACQ) is the majority owner of B & I, and Eric D. Hovde is the managing member of HACQ. When HACQ acquired a controlling interest of B & I, Thomas and B & I entered into an employment agreement. In late 2000 and early 2001, HACQ and the board of B & I concluded that Thomas had breached his employment agreement, a related operating agreement, and his fiduciary duties, by, among other things, misappropriating B & I funds for his personal use.

On April 16, 2001, the B & I board removed Thomas as a member of the board, and as chief executive officer and president of B & I. They also voted to institute litigation against Thomas in Delaware

and provided Thomas with a copy of the draft complaint. Immediately thereafter, the parties negotiated and entered into the Standstill Agreement.

The agreement's pertinent parts provide as follows:

> This Standstill Agreement ("Agreement") is made this the 17th day of April, 2001, by and between. . . .

> WHEREAS, a majority of the members of the Board of Managers of B & I has . . . voted to . . . institute litigation in the Court of Chancery of the State of Delaware . . . as set forth in a certain draft Complaint . . . ; and,

> WHEREAS, the parties hereto agree that it may be in their joint interests to refrain from instituting any litigation during the term of this Agreement.

> NOW, THEREFORE, for and in consideration of . . . , the parties hereto agree as follows:

> 1. *Standstill from Litigation*: The parties hereto . . . agree that each shall refrain from initiating any litigation against any other party hereto, . . . , through and including 12:01 a.m. EDT on April 24, 2001. Thereafter, unless extended in writing signed by all parties, this Agreement shall be null and void and of no further force or effect.

> 2. *First Right to File*: The parties hereto agree that [HACQ] and [B & I] shall be afforded the right to first file their hereinabove described draft Complaint against Michael R. Thomas, in the Court of Chancery of the State of Delaware, . . . , prior to any other party filing any other litigation.

> . . .

> 7. *Termination*: Notwithstanding Section 1 herein, in the event of a breach of this Agreement by Thomas . . . , [HACQ] and/or [B & I] shall have the right to terminate this agreement by giving written notice. . . .

Also, the protection of the Standstill Agreement extended to the parties' "officers," "employees," and "agents."

The parties agreed twice to "extend the term of the Agreement," but only through May 31, 2001. On July 3, 2001, one day after B & I was sold and without prior notice, Thomas filed suit against B & I, HACQ, and Eric Hovde in the Superior Court of Fulton County raising allegations related to the parties' ongoing dispute. Shortly thereafter, B & I and HACQ filed their suit in Delaware. In response, Thomas sought an interlocutory injunction prohibiting the Delaware

action. B & I and HACQ then moved to dismiss the Georgia action on the grounds that Thomas breached the Standstill Agreement. The trial court dismissed Thomas' suit, and Thomas appeals.

The Fulton County court held that the Delaware action "should be treated as the first filed action, because [Thomas] was only able to file suit in this forum by breaching the Standstill Agreement. The Standstill Agreement's purpose was to preclude the filing of any litigation for a certain period of time and to give the defendants the right to file first in Delaware if there was to be litigation."

Thomas contends that the trial court erred in granting the motion to dismiss for several reasons: (1) the right to first file in paragraph 2 of the agreement does not survive the May 31 expiration date found in paragraph 1; (2) the defendants herein had a 30-day opportunity to file suit after May 31 but did not do so; and (3) the entire Standstill Agreement was "null and void and of no further force and effect" after May 31. Thomas also contends the trial court should have granted his motion for an interlocutory injunction.

1. "The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. [Cit.] Construction of a contract by the court involves three steps. [Cit.] First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. . . . Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction. [Cit.]" (Punctuation omitted.) *Atlanta Development v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002).

The Standstill Agreement contains an ambiguity. "Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression. *Kuehn v. Selton & Assoc.*, 242 Ga. App. 662, 668 (7) (530 SE2d 787) (2000)." *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002).

Paragraph 1, the "Standstill from Litigation" paragraph, states that the "Agreement," which is defined in the opening paragraph to mean the entire agreement, "shall be null and void and of no further force or effect" after the date given (which was extended to May 31). Therefore, according to that paragraph, no party could initiate litigation on or before May 31; the parties could litigate after that date because the entire Standstill Agreement would be null and void. But under this interpretation, paragraph 2, the "First Right to File" paragraph, which gave B & I and HACQ the right to file suit first, would never take effect. At all times before May 31, no party could institute litigation, and after May 31, Thomas could file suit first.

The rules of construction can be applied to resolve this ambiguity. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). "The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." (Footnote omitted.) *Ga. Farm &c. Ins. Co. v. Gaster*, 248 Ga. App. 198, 199 (546 SE2d 30) (2001). "The construction of the contract should give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect." (Citations and punctuation omitted.) *Sheridan v. Crown Capital Corp.*, 251 Ga. App. 314, 316 (1) (554 SE2d 296) (2001). And any construction that renders portions of the contract language meaningless should be avoided. *Deep Six v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000).

Therefore, paragraphs 1 and 2 must be construed together to disclose the intent of the parties. And although "[p]arol evidence is inadmissible to add to, take from, or vary a written contract[,] [a]ll the attendant and surrounding circumstances may be proved. . . ." OCGA § 13-2-2 (1). Here, the surrounding circumstances directly support the trial court's conclusion that "[t]he Standstill Agreement's purpose was to preclude the filing of any litigation for a certain period of time and to give the defendants the right to file first in Delaware if there was to be litigation." Thomas agreed that it was in the parties' mutual interests to sell the company. And he agreed that it would be in all parties' best interest to attempt to resolve the open items of dispute while, at the same time, preserving everyone's right to litigate if necessary. The agreement itself provides, "It is the specific intent of the parties hereto to attempt to avoid litigation, by (1) delaying the commencement of such litigation while (2) preserving the rights and positions of all parties, in an attempt to see if the parties can resolve matters by alternate means, including good faith negotiations." Because B & I and HACQ were in a position to file suit first, it follows that they sought to preserve this tactical advantage. Accordingly, we agree with the trial court's construction of the agreement. Under this construction, the final sentence of paragraph 1 still has meaning: it applies to the "Standstill from Litigation" provision in paragraph 1 but not the entire agreement.

*Yargus v. Smith*, 254 Ga. App. 338 (562 SE2d 371) (2002), is instructive. In that case, a real estate sales contract contained conflicting provisions regarding when the sale was supposed to close. Id. at 340. One provision established a specific closing date but another provided for a "Repair Resolution Period," which did not end until after the specified closing date. Id. Construing the agreement as a

whole, this Court held that the contract contained an implied extension of the closing date to allow satisfaction of the Repair Resolution Period. Id. at 341. In so doing, this Court reasoned, "When an unskillfully drafted contract in computing time to perform the duties of the parties must be construed by the court to resolve any conflict in terms, it is the court's duty to discover and to give effect to the intent of the parties in the contract." (Citation omitted.) Id. at 340.

Thomas' interpretation of the contract, that the entire agreement including the "First Right to File" provision was null and void after May 31, would render paragraph 2 meaningless. If the entire agreement were null and void after May 31, B & I and HACQ would never have the right to file litigation first because paragraph 1 prevented them from litigating up until that date. The only possible construction that would give paragraph 2 meaning is to construe it to survive the termination of the "Standstill from Litigation" provision in paragraph 1.

Thomas offers that the two provisions could be construed such that the "First Right to File" provision would operate to protect B & I and HACQ in the event that he breached paragraph 1 by filing suit first prior to May 31, or in the event that he breached paragraph 3, the mutual cooperation provision, by failing to cooperate during the initial term of the agreement. We find these suggestions unpersuasive. They would require us to conclude that the parties intended that paragraph 2 would operate only in the event of a breach and nothing in the language of the agreement reflects such a condition. Moreover, even under Thomas' proposed interpretation, B & I and HACQ would be prevented from suing until they declared that the contract had been terminated, at which time, Thomas would be free to file suit first if he won the race to the courthouse. Reading the agreement as a whole, we find no indication that the parties intended such a meaning.

2. Thomas also argues that B & I and HACQ had an opportunity to file first between May 31, the day the "Standstill from Litigation" provision terminated, and July 3, the day he filed suit. Thomas argues that the "First Right to File" provision cannot be construed to run forever or he could be effectively prevented from ever filing suit. And, the "First Right to File" paragraph only requires that B & I and HACQ be "afforded the right" to file suit first. We hold that the trial court has resolved this issue adversely to Thomas and that there is evidence to support that decision.

Thomas raised the argument that B & I and HACQ had been afforded the right to file at the motion hearing. And it is true that "If no definite time is stated for the performance of a contract, the presumption is that the parties intended that performance would be had

within a reasonable time." (Citations omitted.) *Mansell 400 Assoc. v. Entex Information Svcs.*, 239 Ga. App. 477, 480 (4) (519 SE2d 46) (1999).

But the court necessarily determined that B & I and HACQ had not been afforded a reasonable time when it held that "Thomas was only able to file suit in this forum by breaching the Standstill Agreement." Therefore the remaining question is whether B & I and HACQ presented evidence to support the trial court's ruling. See *Beaulieu of America v. L. T. Dennard & Co.*, 253 Ga. 21, 22 (2) (315 SE2d 889) (1984) (trial court's findings of fact will not be disturbed on appeal absent a total want of supporting evidence).

The record reflects that there was evidence to support the trial court's ruling on this point. One purpose of the agreement was to allow the parties time to sell the company. The parties pursued a sale or merger talks through at least "late June," and the sale was consummated shortly thereafter. Thomas filed suit in Georgia on July 3. Because there is at least some evidence supporting the trial court's decision that B & I and HACQ had not been afforded a reasonable opportunity to file suit first, there was no error.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED APRIL 9, 2003 —
RECONSIDERATION DENIED APRIL 22, 2003.

*Wilson Law Firm, L. Matt Wilson, Anthony O. Lakes*, for appellant.

*Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Ronan P. Doherty*, for appellees.