A04A0275. STEVENS et al. v. YCA, LLC et al.
(602 SE2d 214)

PHIPPS, Judge.

Thomas P. Stevens and PMAlliance, Inc. appeal a declaratory judgment that Stevens was bound by certain restrictive covenants. They contend that the trial court erred in construing an asset purchase agreement. We find no error and affirm.

The material facts of this case are not disputed. In 1996, Stevens was employed by Young, Clark & Associates, Inc. (Young, Clark) and entered into an agreement with that company that contained, among other things, a covenant restricting him from soliciting Young, Clark's customers for two years after his employment with that company ended. In 1998, Young, Clark was sold to ProfitSource Corporation, which later changed its name to EPS. (Young, Clark continued to operate under its own name.) As part of that sale, on November 25, 1998, Stevens (then also a stockholder) entered into three additional

agreements: (1) a stock purchase agreement, which provided that the restrictive covenants contained in his 1996 agreement remained enforceable, (2) an employment agreement, which contained no restrictive covenants, and (3) a confidential information and employee invention agreement, which contained a covenant restricting him from recruiting Young, Clark's employees for a 12-month period after his employment terminated.

In December 2000, Young, Clark (as Seller) entered into an asset purchase agreement with YCA, LLC (as Purchaser). Alden P. Young was on both sides of the transaction, as president and a shareholder of Young, Clark and as the sole shareholder of YCA. (EPS also executed the agreement as Shareholder.) Stevens thereby became an employee of YCA.

On January 6, 2003, Stevens resigned his employment with YCA. Within a week, Stevens incorporated PMAlliance, which began engaging in the same business and with the same customer base as YCA. YCA and Young then contacted several customers and advised them that Stevens could not perform work for them because of a variety of restrictive covenants.

Stevens and PMAlliance thus filed this action against YCA and Young, seeking a declaratory judgment that the asset purchase agreement extinguished Stevens's duties pursuant to the restrictive covenants. They relied on Section 3.10 of the asset purchase agreement, which provides,

> *Release of Restrictive Covenants.* Seller and Shareholder hereby release and extinguish the restrictive covenants applicable to Alden P. Young and/or all employees of Seller who become employees of Purchaser and set forth in Section 4.4 of the Stock Purchase Agreement by and among Profit-Source Corporation and Young, Clark & Associates, Inc., and the stockholders named therein, dated November 25, 1998 and any other similar restrictive covenants applicable to Alden P. Young and/or all employees of Seller who become employees of Purchaser.

YCA and Young acknowledged that the section, in isolation, might appear to support Stevens and PMAlliance's position. However, they countered, Section 3.10 extinguished only Young, Clark's rights in the restrictive covenants. They argued that the restrictive covenants were transferred from Young, Clark to YCA pursuant to Section 1.1 of the asset purchase agreement, which pertinently provides,

*Assets to be Acquired.* . . . Purchaser agrees to purchase from Seller, and Seller agrees to sell to Purchaser . . . all right, title and interest of Seller in and to all of the tangible and intangible assets of Seller . . . , including but not limited to the following: (a) . . .

(b) all of Seller's right, title and interest under those contracts of Seller, which for purposes hereof, shall mean all . . . employment agreements, [and] rights of the Seller, Shareholder . . . under the restrictive covenants described in Section 3.10 . . . and all other agreements and instruments relating to the Purchased Assets and the operation of Seller to which Seller is a party or to which the Purchased Assets and the operation of Seller to which Seller is a party or to which the Purchased Assets are subject or bound. . . .

After a hearing and examination of the asset purchase agreement as a whole, the court concluded that the agreement,

although poorly drafted, contains no ambiguity with regard to the restrictive covenants that cannot be resolved by the Court's application of the pertinent rules of contract construction. The parties intended for YCA, LLC to acquire the restrictive covenants as assets, and for Young, Clark & Associates, Inc. to release and extinguish any rights in the restrictive covenants as applicable to its employees who become employees of YCA, LLC.

1. Stevens and PMAlliance maintain that Section 3.10 of the asset purchase agreement extinguished Stevens's obligations set forth in the restrictive covenants. They argue that Section 3.10 extinguished the restrictive covenants of some employees (Young, Clark employees who joined YCA, such as Stevens), while it did not affect restrictive covenants of other employees (Young, Clark employees who did not join YCA, unlike Stevens). According to Stevens and PMAlliance, such release was necessary to allow YCA to operate free of the restraints in the cited covenants.

The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement.[1]

The trial court must decide if the contract language is ambiguous; if it is, the trial court must apply the applicable rules

---

[1] *Thomas v. B & I Lending*, 261 Ga. App. 39, 41 (1) (581 SE2d 631) (2003).

of construction. OCGA § 13-2-2 sets forth the rules for interpreting contracts generally. The existence or non-existence of an ambiguity is itself a question of law for the court. A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied.[2]

A question arises for the factfinder only when there appears to be an ambiguity in the contract that cannot be negated by the court's application of the statutory rules of construction.[3]

Although Section 3.10 in isolation might be understood as releasing Stevens from the restrictive covenants at issue, the parties' intent is determined from a consideration of the entire agreement; if possible, all of its provisions should be interpreted to harmonize with each other.[4] And that construction upholding the agreement "in whole and in every part" is preferred.[5]

Stevens and PMAlliance's argument ignores Section 1.1 (b), which expressly transfers the right to enforce the restrictive covenants from Young, Clark to YCA. Their argument requires a determination that, pursuant to Section 1.1, YCA purchased as an "asset" the restrictive covenants, which were unenforceable, pursuant to Section 3.10. We reject the argument that YCA purchased, but simultaneously extinguished, restrictive covenants. By purchasing restrictive covenants that it could not enforce, YCA effectively would have purchased no covenants at all, a conclusion that renders language in Section 1.1 meaningless.

The construction of Section 3.10 that harmonizes with Section 1.1 is that the parties intended that Young, Clark would no longer be able to enforce the covenants, while YCA acquired Young, Clark's right to do so. Therefore, the trial court properly constructed the asset purchase agreement. Accordingly, such agreement did not release Stevens from the restrictive covenants.

2. Stevens and PMAlliance contend that the trial court's declaratory judgment "cuts directly against" Section 8.4 of the asset purchase agreement. That section states,

---

[2] (Citations and punctuation omitted.) *Tachdjian v. Phillips*, 256 Ga. App. 166, 168-169 (568 SE2d 64) (2002).

[3] *Thomas*, supra.

[4] *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (34 SE2d 839) (1945); *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 479 (574 SE2d 585) (2002).

[5] OCGA § 13-2-2 (4).

> *Termination Agreements with Employees.* All employees of Seller shall, prior to Closing, enter into such agreements with Seller necessary to terminate any and all prior employment agreements between such employees and Seller.

Stevens and PMAlliance urge us to define broadly "employment agreements," as in Black's Law Dictionary: An agreement or contract between employer and employee in which the terms and conditions of one's employment are provided.[6] Stevens and PMAlliance argue that the term, so defined, would encompass the 1996 and 1998 agreements containing the restrictive covenants, thus illustrating that the parties to the asset purchase agreement intended to extinguish the restrictive covenants.

Young and YCA contest such a broad definition. They claim that the term was intended to include only the separate documents defining the terms of employment (i.e., compensation and benefits) signed by Stevens and other employees as part of the 1998 stock purchase. Young and YCA claim that the effect of Section 8.4 was to formally end only those agreements.

Stevens and PMAlliance concede in their appellate brief that a broad definition of "employment agreement" would have required YCA to obtain new restrictive covenants with its employees. But the language of Section 1.1 (b) clearly expresses the parties' intent that YCA acquire Young, Clark's rights in the existing restrictive covenants. Therefore, Section 1.1 (b) made it unnecessary for YCA to obtain new restrictive covenants covering its employees. The construction of Section 8.4 that comports with Section 1.1 (b) of the asset purchase agreement is that the parties did not intend for "employment agreements" to include any and all agreements touching upon employment. Furthermore, Section 1.1 (b) lists "employment agreements" separate from "rights of the Seller, Shareholder . . . under the restrictive covenants," supporting the conclusion that the parties did not intend to define "employment agreement" as broadly as Stevens and PMAlliance urge.

3. Stevens and PMAlliance contend that Section 9.2 "proves conclusively the intent of the parties to release and extinguish all restrictive covenants regardless of the ultimate outcome of the asset purchase transaction." Section 9.2 provides,

> *Effects of Termination.* If this Agreement is terminated, no party shall have any obligations to the others hereunder except for those obligations in respect of confidentiality and

---

[6] Black's Law Dictionary (6th ed. 1990), p. 525.

the return of confidential information . . . , and Alden P. Young and all employees of Seller who become employees of Purchaser will be released from all of the restrictive covenants of the type referred to in Section [3.10].

Stevens and PMAlliance focus on the language "all employees of Seller who become employees of Purchaser will be released from all of the restrictive covenants," to the exclusion of anything else. The construction that comports with the remainder of the agreement, however, is that, in the event the transaction failed to close, those individuals who would have become employees of YCA would have no obligation to YCA pursuant to the restrictive covenants at issue.[7]

4. Stevens and PMAlliance contend that Section 9.3 shows that the parties to the asset purchase agreement intended to extinguish the restrictive covenants. That section states,

*Effect of any Bankruptcy.* If the creditors of Seller, Shareholder, EPS Solutions Corporation and/or their affiliates make a successful claim under the federal bankruptcy rules that the sales and transfers described herein are unlawful preferences, and, as a result, Purchaser is required to return any assets to Seller or such creditors, Alden P. Young and all employees of Seller who become employees of Purchaser will be released from all of the restrictive covenants of the type referred to in Section [3.10].

Stevens and PMAlliance claim the language "Alden P. Young and all employees of Seller who become employees of Purchaser will be released from all of the restrictive covenants" reaffirmed the parties' intent to release and extinguish all covenants applicable to Young, Clark employees who joined YCA.

To the contrary, when the excised language is read within the context of the remainder of its section and the entire agreement, Section 9.3 supports the conclusion that the parties intended YCA to acquire, as part of the asset purchase, enforceable restrictive covenants. Had the parties intended otherwise, the release of YCA's employees from the covenants as a result of a bankruptcy would not have been a concern.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

---

[7] See *Tachdjian,* supra at 169 (where the instrument as it stands is without meaning, words may be supplied); OCGA § 13-2-2 (6).

DECIDED JULY 9, 2004 —

*Smith, Currie & Hancock, Daniel M. Shea, Catherine M. Hobart, Matthew T. Gomes*, for appellants.

*Elarbee, Thompson, Sapp & Wilson, Douglas H. Duerr, Jeffrey S. Hiller*, for appellees.