A02A1567. ATLANTA DEVELOPMENT, INC. v. EMERALD CAPITAL INVESTMENTS, LLC.
(574 SE2d 585)

SMITH, Presiding Judge.

Atlanta Development, Inc. (AD) and Emerald Capital Investments, LLC (Emerald), two real estate developers, executed a purchase and sale agreement for certain real property. Each claims the other breached that agreement. According to AD, the closing was to occur on or before July 19, 2001, while Emerald says the closing date was July 19, 2001, *or* within 14 days of final approval of the exemption plat. Both companies sought summary judgment. Upon finding the date of closing was not ambiguous, the trial court granted partial summary judgment to Emerald. AD appeals. Because we find the contractual terms in dispute have ambiguity that cannot be resolved by applying the statutory rules for contract construction, we reverse.

On April 11, 2001, AD contracted with Emerald to purchase the real property located at 116 and 120 Mt. Paran Road, Atlanta, Georgia, for $1,364,000. AD planned to build four single-family homes at that location with each priced to sell in the range of $850,000. The contract required Emerald to install a private road and all utilities. It specified a closing date of June 15, 2001, and stated that "[t]ime is of

the essence of this Agreement." The contract contained five special stipulations and provided that these five special stipulations, "if conflicting with any other paragraph, shall control." Special stipulation 1 provided:

> Purchaser will close on all (4) four lots two weeks after final approval of the Exemption Plat by Fulton County, providing that all development improvements are installed per the "Permitted" plans stamped and approved from Fulton County on January 22, 2001 and named Emerald Walk at Mt. Paran. This developed land to include all utilities: electric, phone, cable, gas, water, sewer and private road. Also, Purchaser may choose to close on any and all lots prior to any of the above-completed conditions at purchaser's discretion.

In lieu of a down payment, the contract obligated AD to provide Emerald with a $60,000 letter of credit which AD obtained from Wachovia Bank. Under special stipulation 3, the letter of credit would be payable to Emerald "in the event of an uncured breach" by AD or would be refunded to AD "in the event of an uncured breach" by Emerald.

The transaction did not close on June 15. As of that date, Emerald had not completed the improvements or recorded the exemption plat. Emerald sought an extension of time. On June 18, Emerald prepared an amendment and presented it to AD. On June 19, AD and Emerald executed a written amendment entitled: "AMENDMENT TO CHANGE CLOSING/POSSESSION DATE, AMENDMENT #1." Amendment No. 1 provided: "The closing date specified in the aforementioned Agreement is hereby amended as follows: This transaction shall be closed on July 19, 2001, or on such other date as may be agreed to by the parties in writing, *or within 14 days from completion of the property as described in Special Stipulation #1.*" (Italics denote handwritten portion.) It is undisputed that it was AD who added the italicized phrase.

The transaction, however, did not close on July 19, and the parties never agreed in writing to a different date. The crux of this litigation is the meaning of "or within 14 days from completion of the property as described in Special Stipulation #1." Evidence shows that as of July 19, Emerald had not obtained final approval by Fulton County of the exemption plat. On July 24, the president and owner of AD, Cheryl Simoni, and Charles L. McClain, the managing partner of Emerald, met. Simoni testified that she called the meeting, "[b]ecause our contract was up and we were trying to see if we had any interest in the property at that point." Simoni explained, "if we

were going to buy the property, we wanted to have a different contract with different terms." Simoni testified that "Charles [McClain] brought another contract extension and . . . kind of turned white when we said we weren't going to sign it." Simoni testified, "Charles knew the contract expired. That's why he brought the extension." She explained that after April the real estate market had softened and so AD wanted better contract terms. Simoni testified that when their July 24 meeting ended, McClain had told her, "let me go talk to my partner. We'll see what we can do." She understood "that Charles was going to see what his partner said about if they wanted to sell the property to somebody else or if they wanted to renegotiate with us."

It is undisputed that before the meeting on July 24, Roger Crysler, acting as an agent for Emerald, had prepared a second amendment to extend the closing date. Amendment No. 2 dated July 24 proposed a new closing date of August 15. McClain admitted having presented Amendment No. 2 to Simoni at the July 24 meeting. When asked, "But Ms. Simoni did tell you that it was Atlanta Development's position that the closing date had come and gone?" McClain responded, "I guess you could say that. You could state it that way."

On July 30, AD notified Wachovia, the issuer of the letter of credit, that the contract between AD and Emerald had expired. AD directed Wachovia to extinguish the letter because "the seller has failed to fulfill the terms of the agreement, to wit: Fulton County has not approved the Plat nor have the improvements been installed."

On August 1, Fulton County's approval of the exemption plat was recorded. The next day, Emerald's agent, Crysler, hand-delivered notice of the recordation to AD. At that time, the utility work was not complete, and the development improvements were not finished. Crysler testified that on August 2, he told AD that Emerald "was ready to close on the property and asked Atlanta Development to select a closing date."

Simoni advised Emerald in writing on August 8 that AD would not agree to amending the contract again. On behalf of AD, Simoni wrote,

> Regretfully, I am unable to agree to your request to extend the closing date to August 15, 2001, as written. As I am sure you are aware, the climate in the banking industry is changing rapidly. Unfortunately, without subordination of the loan and a reduction in the purchase price we will not be able to proceed. I am sending a letter to you requesting the return of our Letter of Credit in the event we cannot move forward from here. I had hoped that we could come to some kind of agreement and I am still open to any suggestions that you might have.

In a second more detailed letter also dated August 8, AD informed McClain that Emerald had failed prior to the closing date of July 19 to "(1) obtain final approval of the Exemption Plat of Fulton County and (2) complete and install all development approvals per the 'permitted' plans stamped and approved by Fulton County on January 22, 2001.'" The August 8 letter noted, "The Closing Date has not been extended beyond July 19, 2001, and Buyer rejected Seller's written proposal dated July 24, 2001 to extend the Closing Date to August 15, 2001." AD claimed that due to the "Seller's inability to close on or before July 19, 2001," it was entitled to the return of the letter of credit. AD declared, "[u]pon return of the letter of credit, Seller and Buyer shall have no further obligations under the Agreement."

Emerald did not return the letter of credit or notify AD that the requirements of special stipulation 1 had been met. Instead, on August 15, Emerald presented the letter of credit to Wachovia for payment of $60,000, notwithstanding AD's request for the return of that document. On purely technical grounds, Wachovia refused the presentment. On August 17, AD's attorney, after learning about the attempted draw, notified McClain that should he again try to make a "baseless presentment" of the letter of credit, AD would seek all available legal and equitable remedies. The letter requested written assurances that no further attempt would be made to present the document to Wachovia for payment.

Emerald did not provide the written assurances or otherwise communicate with AD until August 21. After Emerald refused to return the letter of credit, AD filed suit on August 20, 2001, seeking damages for breach of contract, fraud, unjust enrichment, punitive damages, and attorney fees. AD also sought a temporary restraining order to enjoin Wachovia from honoring the letter of credit and Emerald from drawing on it. On August 21, Emerald's counsel notified AD for the first time that AD was the party in breach. On August 30, Emerald contracted with John Willis Homes, Inc. to sell the same property for $1,044,000 with no real estate commissions.[1] On September 12, Emerald answered and counterclaimed against AD for breach of contract, unjust enrichment, and attorney fees for bad faith. Both AD and Emerald moved for summary judgment, each contending the other was the party in breach.

In support of summary judgment, AD and Emerald relied heavily upon the depositions of Simoni and McClain. McClain testified that he understood the original contract entered in April had a clos-

---

[1] Emerald sold the realty to John Willis Homes on September 20. With no broker commissions, the actual difference in selling prices was $146,400.

ing date of June 15 or "[u]p until November 15th." He testified "the outside date" was the date that the letter of credit expired. When asked where the contract specified the November date, McClain answered, "[i]t doesn't specifically say that." He admitted the contract made no mention of November 15 and there had been no discussion with AD about having a November 15 expiration date. McClain also conceded that he did not learn that the letter of credit had an expiration date of November 15 until after May 15, 2001, more than a month after AD and Emerald had executed the contract. McClain testified that by his interpretation of the contract, the closing could have occurred on June 15, or two weeks after final approval of the exemption plat and completion of the work required by the contract, or any time before November 15 when the letter of credit expired. When asked, "[a]nd so under your reading, that date could continue for years; isn't that right?" he responded, "I don't know."

Simoni testified that she understood Amendment No. 1 to mean that the closing would occur no later than July 19 or within 14 days after the approval of the exemption plat whichever date occurred sooner. According to Simoni, "[w]hen we went under contract with Charles in April, he thought he was a week or two away from having the plat recorded." Simoni testified that AD was anxious to close as soon as the plat was approved. She testified that "we agreed . . . that if he got it done sooner, we would close sooner."[2]

After a hearing, the trial court denied AD's motion for summary judgment, granted Emerald's motion on AD's claims, and granted judgment to Emerald on its counterclaim for breach of contract on the issue of liability for the breach. In reaching that result, the court found that "the contract in this case is unambiguous and is capable of only one reasonable interpretation." The court found the original contract had given AD "the option of closing on June 15, 2001, or, as provided in Stipulation 1, 'two weeks after final approval of the Exemption Plat by Fulton County, providing that all development improvements are installed.'" The trial court found that the amended contract gave AD the option to close on July 19 or "within fourteen days from completion of the property as described in Special Stipulation No. 1." Noting that "[t]he parties agree that the improvements called for in Special Condition 1 [sic] were completed by

---

[2] Emerald bought the property on August 17, 2000, for approximately $700,000. In January 2001, three months before entering the contract with AD, Emerald had contracted with another purchaser for the sale of this same property with the closing set to occur before April 2001. That closing did not take place, and thereafter AD and Emerald executed the contract at issue here. McClain acknowledged that Emerald and the earlier would-be purchaser had an unresolved dispute over the earnest money.

August 14, 2001," the trial court found "the closing date should have been within 14 days of that date."

The trial court also decided that Emerald was not required to notify AD about the completion of the improvements because "Atlanta Development had already repudiated the contract at this point." The court found that Emerald was free to sell its property to another buyer since AD "had already refused to close, and Emerald needed to mitigate its damages." In light of the "uncured breach" by AD, the trial court also found that "under the terms of Special Stipulation 3, the letter of credit was payable to Emerald." While awarding partial summary judgment to Emerald on its breach of contract counterclaim, the trial court denied the balance of Emerald's counterclaim.[3]

1. AD contends that the trial court erred in granting Emerald's motion for summary judgment and by ruling that AD breached the contract.

On appeal from the ruling on a motion for summary judgment, this court reviews questions of law de novo. *Sagon Motorhomes v. Southtrust Bank*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997). In so doing, we owe no deference to the trial court's legal analysis or legal conclusions. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996). Construction of a contract by the court involves three steps. *Garrett v. Women's Health Care of Gwinnett*, 243 Ga. App. 53, 56-57 (532 SE2d 164) (2000).

> First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or nonexistence of an ambiguity is . . . a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.

(Citations and punctuation omitted.) *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282) (1995). A word or phrase is ambiguous when its meaning is

---

[3] A consent order enjoined Wachovia from paying the letter of credit.

uncertain and may fairly be understood in more ways than one. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (381 SE2d 322) (1989). With these fundamental principles in mind, we now examine the contractual provisions in dispute.

The original contract as executed in April provided for the specific closing date of June 15, 2001, or within two weeks of final approval of the exemption plat provided that the development improvements were installed. When Emerald was unable to fulfill its contractual obligations by that deadline, Emerald drafted an amendment and submitted it to AD. Emerald proposed this language: "The closing date specified in the aforementioned Agreement is hereby amended as follows: This transaction shall be closed on July 19, 2001, or on such other date as may be agreed to by the parties in writing." AD, however, added the handwritten phrase, "or within 14 days from completion of the property as described in Special Stipulation #1." Simoni testified that she "understood Amendment No. 1 to mean that the closing date was to be the earlier of July 19, 2001 or fourteen days from Emerald Capital's completion of the property as described in Special Stipulation #1 of the Contract." She explained that when Emerald proposed a second amendment, "[b]ecause of changed conditions, Atlanta Development was unwilling to extend the closing date under the Contract for a third time."

In its brief, Emerald argues that handwritten language was inserted to give the parties "the flexibility they desired" and to reaffirm "both parties' intent to close two weeks after the approval of the exemption plat, pursuant to Special Stipulation No. 1." But, by this interpretation, delays in obtaining final approval of the exemption plat or in installing the development improvements would make the closing date indefinite and would negate the term "shall be closed on July 19, 2001," making the specified date totally superfluous.

The law favors a construction that will uphold the contract as a whole, and the entire contract should be read in arriving at the construction of any part. *Thornton v. Kumar*, 240 Ga. App. 897, 898-899 (525 SE2d 735) (1999). It is axiomatic that any construction that renders portions of the contract language meaningless should be avoided. *Deep Six v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000).

Here, the language at issue is open to more than one interpretation and is ambiguous. Although Simoni testified that she understood the closing would have to take place not later than July 19, McClain testified that the closing could occur on November 15, the date the letter of credit expired, or any other date within 14 days of Emerald's compliance with special stipulation 1. If, as Emerald claims, the July 19 date had no significance, it makes no sense that Emerald would have submitted a second amendment to AD under

which Emerald sought to specify a new closing date of August 15. Nor would Emerald have needed AD's approval of Amendment No. 1 because the June 15 closing date would also have been meaningless since the original contract required AD to "close on all (4) four lots *two weeks after final approval of the Exemption Plat* by Fulton County" (provided the improvements were installed). (Emphasis supplied.)

"[D]isagreement as to the intent of the parties [is] an evidentiary, factual matter for resolution by jury and not a matter of law for determination by the court. [Cits.]" *Crestlawn Mem. Park v. Scott*, 146 Ga. App. 715, 717 (1) (247 SE2d 175) (1978). Although parol evidence is admissible to explain ambiguities, the question, as to what was intended here is an issue of fact that requires jury resolution. See *Tachdjian v. Phillips*, 256 Ga. App. 166, 171 (568 SE2d 64) (2002).

2. AD contends that the trial court erred in denying its motion for summary judgment because, as a matter of law, Emerald failed to satisfy its obligations under special stipulation 1 by July 19, 2001. In light of our determination in Division 1, we need not address this issue.

*Judgment reversed. Eldridge and Ellington, JJ., concur.*

DECIDED NOVEMBER 19, 2002.

*Parks, Chesin, Walbert & Miller, Larry Chesin*, for appellant.
*Shapiro, Fussell, Wedge, Smotherman & Martin, David C. Moulds, Nicholas S. Papleacos, Michael E. Ray*, for appellee.