A03A0398, A03A0399. LODGENET ENTERTAINMENT CORPORATION v. HERITAGE INN ASSOCIATES, L.P.; and vice versa.
(583 SE2d 225)

MIKELL, Judge.

Lodgenet Entertainment Corporation ("Lodgenet") contracted with Heritage Inn Associates, L.P. ("Heritage") to provide television programming services to Heritage's hotel in Orange County, Florida. Heritage terminated the agreement after transferring the property

---

to Orange County under threat of condemnation, and Lodgenet sued Heritage for breach of contract. Lodgenet and Heritage both moved for summary judgment. In Case No. A03A0398, Lodgenet appeals the trial court's order granting Heritage's motion for summary judgment and denying Lodgenet's cross-motion for summary judgment. In Case No. A03A0399, Heritage appeals the trial court's ruling that Heritage was not entitled to summary judgment under the contract's "force majeure" provision. For the reasons set forth below, we affirm the trial court's order in Case No. A03A0398. Heritage's appeal in Case No. A03A0399 is moot.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] A defendant need not produce any evidence to obtain summary judgment, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[2] Our review is de novo.[3]

The record shows that on May 25, 1999, the Orange County Board of County Commissioners (the "Board") approved a resolution authorizing Orange County, Florida, to take the hotel by power of eminent domain. On May 27, 1999, the Board filed a petition in eminent domain in a Florida court. The Board and Heritage entered into a stipulated final judgment in the eminent domain proceedings. Under the terms of the stipulated final judgment, Orange County took title to the property and leased it back to Heritage until January 2, 2001. On November 30, 2000, Heritage notified Lodgenet that it was terminating their contract on January 1, 2001. Heritage ceased business operations at the hotel on January 1, 2001.

### Case No. A03A0398

1. (a) Lodgenet claims that (i) the trial court erred in granting summary judgment to Heritage on the ground that Section 8.5 of the contract excused Heritage from further performance, and (ii) no other provision of the contract excused Heritage from further performance. We disagree because Section 8.5 of the contract unambiguously provides that either party may terminate the contract if either party discontinues business operations.

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[2] Id. at 495.
[3] *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

"The construction of a contract is a question of law for the court."[4] Under the rules of contract construction,

> [f]irst, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Thus, where the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent. Second, if the potential for ambiguity appears, the existence or non-existence of an ambiguity is itself a question of law for the court, unless an ambiguity remains even after the court has applied the pertinent rules of contract construction. OCGA § 13-2-2. Finally, issues of contract construction will be submitted to the jury only when there appears to be an ambiguity in the contract which cannot be resolved by the court's application of the statutory rules of construction.[5]

Section 8.5 allows either party to terminate the agreement upon the occurrence of certain events, stating, in pertinent part: "whenever operations of business by either party are discontinued, by law or otherwise, for any reason whatsoever for a period of thirty (30) days or more, then either party may give notice of intention to terminate this Agreement."[6] Lodgenet argues that the purpose of Section 8.5 is to allow the termination of the contract in the event of bankruptcy or de facto insolvency. Lodgenet contends that the language in question appears in the middle of a very long paragraph replete with references to bankruptcy and insolvency, and should be interpreted

---

[4] OCGA § 13-2-1.

[5] *Southwest Ga. Area Health Ed. Center v. Rowell*, 250 Ga. App. 254, 258 (551 SE2d 99) (2001).

[6] In its entirety, Section 8.5 of the contract provides:
If either party shall make an assignment of property for the benefit of creditors, or shall file a voluntary petition under any bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency shall be filed against either party under any bankruptcy or insolvency law, or whenever a petition shall be filed by or against either party for reorganization under any applicable receivership or bankruptcy statutes, or whenever a permanent receiver or trustee of or for the property of either party shall be appointed *or whenever operations of business by either party are discontinued, by law or otherwise, for any reason whatsoever for a period of thirty (30) days or more, then either party may give notice of intention to terminate this Agreement* at the expiration of five (5) days from the date of service of such notice of intention, and upon the expiration of said five (5) day period, this Agreement and the rights hereby granted, shall terminate. The insolvent party shall be liable to the terminating party, however, for any damages resulting from such insolvency or termination. In addition, the parties agree that this Agreement constitutes an executory contract as defined in and used in 11 U.S.C. [§] 365, as now written or as it may hereafter be amended.
(Emphasis supplied.)

to mean a business discontinuation for any reason due to insolvency or bankruptcy. Lodgenet also argues that the disputed language, if interpreted literally and in isolation, would render the remainder of the section superfluous.[7]

We conclude that the disputed provision is clear and unambiguous. The contract allows termination after the cessation of business operations "for any reason whatsoever." This is sweeping and inclusive language. Also, it is apparent that Lodgenet drafted the contract because it is on a pre-printed form which is copyrighted by Lodgenet. If the contract were ambiguous it would be construed against its drafter.[8] Furthermore, the cessation of business clause does not make the remainder of the section superfluous because businesses can, in some circumstances, operate under bankruptcy. Based on the undisputed discontinuation of Heritage's business, Section 8.5 of the contract authorized Heritage to terminate the contract "and the rights hereby granted." Heritage did not breach the contract by doing so.

(b) Lodgenet shows that Heritage failed to dispute a letter from Lodgenet to Heritage's general partner specifying a contract "buyout" amount pursuant to a default by Heritage. Lodgenet argues that it can be inferred from Heritage's failure to dispute the letter that Heritage agreed that the contract was terminated because of a default by Heritage. We disagree. Heritage's general partner was not shown to be under any duty to respond, and no inference was created.[9]

Lodgenet also argues that Heritage holds monies it received from Orange County under the settlement agreement in a constructive trust for Lodgenet. Because Lodgenet failed to argue it was entitled to a constructive trust in the court below, this issue has been waived.[10]

2. Lodgenet claims Heritage breached Section 12.2 of the contract by failing to assign Heritage's interest in the contract to the new owner of the hotel property, and that the trial court erred in denying Lodgenet's motion for summary judgment because the contract was terminated pursuant to Heritage's default under that section. Again, we disagree.

Section 12.2 provides in pertinent part:

In the event that the party executing this Agreement on behalf of Hotel turns over management or ownership of the

---

[7] See, e.g., *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 478 (1) (574 SE2d 585) (2002).

[8] *Hibbard v. P.G.A., Inc.*, 251 Ga. App. 68, 70 (1) (553 SE2d 371) (2001).

[9] Compare *Improved Fertilizer Co. v. Swift & Co.*, 15 Ga. App. 601, 611-612 (84 SE 132) (1915) (silence may show consent when there is a good faith duty to respond to a business correspondence).

[10] See *Weekes v. Nationwide Gen. Ins. Co.*, 232 Ga. App. 144, 146 (1) (500 SE2d 620) (1998).

> Hotel Premises, as the case may be, to another party other than an Affiliate,[11] such party shall assign this Agreement on behalf of Hotel to the party gaining management or control of the Hotel Premises, as the case may be.

Lodgenet contends that by selling the hotel premises to the County in the sale and lease back arrangement, that Heritage "turn[ed] over management or ownership of the Hotel Premises" to the County, and that Heritage was accordingly obligated to assign the contract to the County, but did not do so. Heritage's response is that the recipient of the assignment must be "the party gaining management or control of the Hotel Premises," and contends Heritage unquestionably continued to manage and control the hotel premises up until the time the lease expired.

If we treat Section 12.2 as unambiguous, the express terms of the agreement do not support Lodgenet. The contract does not refer to a transfer by Heritage. It refers to an act in which "the party executing this Agreement on behalf of Hotel turns over management or ownership of the Hotel Premises." "Hotel" is defined as "Heritage Inn Associates, L. P." The party executing the contract on behalf of Heritage is "David L. Wright as Agent for Heritage Inn Associates, L. P." The record shows that Heritage owned the hotel and transferred it to the County. But Section 12.2 would not apply because there was no "turn[ing] over" of the management or ownership of the hotel premises by the party executing the contract on behalf of Heritage.

If we construe Section 12.2 as if there is an ambiguity, we reach the same result. The term "turns over" is arguably ambiguous. If there is an ambiguity, "[t]he intent of the parties governs as the cardinal rule of construction."[12] When we look at the intent of parties as manifested by the contract in its entirety,[13] we cannot find a breach by Heritage. In describing Heritage, the contract refers to it as the "operator" of the premises,[14] and not as the owner. The ultimate recipient of the "turn[ing] over" under Section 12.2 is to have "management or control" of the hotel premises. Heritage did own the fee interest in the property and transferred it to Orange County, but Heritage retained control of the hotel. If the transfer of the property were to trigger the assignment provisions in this situation, then the assignment would be from the ongoing operator of the hotel to a non-operating lessor. This result would be against the apparent intent of

---

[11] Although capitalized, this does not appear to be a defined term.

[12] *Fontaine v. Sidelines IV, Inc.*, 245 Ga. App. 681, 683 (1) (538 SE2d 137) (2000); OCGA § 13-2-3.

[13] See *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993).

[14] The contract provides: "WHEREAS, Hotel operates a lodging facility. . . ."

the parties. Accordingly, we conclude that Lodgenet cannot show a breach of contract based on Heritage's failure to assign it to Orange County.

## Case No. A03A0399

3. In Case No. A03A0399, Heritage argues that the trial court erred in denying its motion for summary judgment under Section 13.14 of the contract. This section excuses contract performance upon the occurrence of certain events beyond the control of the contracting party. The trial court refused to find that the condemnation constituted a force majeure as a matter of law under this section. In view of our ruling in Case No. A03A0398 affirming the trial court's grant of summary judgment to Heritage on other grounds, the appeal in Case No. A03A0399 is moot and must be dismissed.[15]

*Judgment affirmed in Case No. A03A0398. Appeal dismissed as moot in Case No. A03A0399. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JUNE 6, 2003.

*Gary M. Wisenbaker*, for appellant.

*Arnall, Golden & Gregory, Robert L. Rothman, Michaeleen E. Crowell*, for appellee.

---

[15] See *McCoy v. Patten Ga. Corp.*, 260 Ga. 877 (401 SE2d 9) (1991) (dismissing cross-appeal as moot upon affirming trial court's grant of summary judgment).