A03A2278. FOSTER et al. v. OHLWILER et al.
(597 SE2d 481)

PHIPPS, Judge.

The Superior Court of Dawson County was called upon to determine whether Robert Ohlwiler and his wife, Anita ("the Ohlwilers") could sell their shares of stock in Hidden Valley Resorts, Inc. to nonshareholders, without first offering them to other shareholders. Steven Foster and Donald Landry, shareholders of the corporation, claimed that a document entitled "corporate resolution" established that the Ohlwilers' shares were so restricted. While the matter was pending, the Ohlwilers proceeded with a sales transaction, and Foster and Landry thereafter sought to have the Ohlwilers held in contempt. After an evidentiary hearing, the court found that the shares were not restricted as claimed by Foster and Landry, declared judgment against them and in favor of the Ohlwilers, and denied Foster and Landry's contempt motion. On appeal, Foster and Landry contend that the court's rulings were erroneous. Because the record shows otherwise, we affirm.

On November 8, 2002, Foster and Landry filed a complaint against the Ohlwilers (Case No. 02-CV-510-C), alleging that the Ohlwilers had entered into an agreement to sell their shares to nonshareholders, that a "corporate resolution" showed that Foster and Landry, as shareholders, were entitled to first refusal rights of the Ohlwilers' shares, that the Ohlwilers had not offered to sell their shares to them, and that therefore the Ohlwilers were in violation of the corporate resolution. Foster and Landry also alleged that the Ohlwilers' actions constituted tortious interference with their business relations with the corporation. They sought damages, a declaratory judgment concerning their first refusal rights as shareholders, and specific performance by the Ohlwilers. In addition, Foster and

Landry filed a motion for interlocutory injunction, seeking to halt a pending sale of the shares. A hearing on their motion was set for January 2003.

The Ohlwilers answered Foster and Landry's complaint, denying that their agreement with the nonshareholders violated any corporate resolution. They filed counterclaims against Foster and Landry, alleging malicious use of process and wrongful interference with contract.

In addition, on November 15, 2002, the Ohlwilers filed, as a separate action in the same court (Case No. 02-CV-523-C), a petition against Foster and the corporation, seeking a declaratory judgment regarding the restriction alleged by Foster and Landry. The Ohlwilers claimed that (1) the document, referred to by Foster and Landry as a "corporate resolution" had been written in 1990, when Robert Ohlwiler was married to his former wife, Linda; (2) at that time, Robert and Linda Ohlwiler were the only shareholders of the corporation; (3) Robert and Linda Ohlwiler had desired that each have a first refusal right with regard to the shares of the other; (4) Robert and Linda Ohlwiler had intended the cited document to apply only to them, and not to any future shareholders; and (5) the document was never signed. A hearing on the Ohlwilers' petition was set for January 2003.

Meanwhile, the Ohlwilers proceeded with the sale on November 25, placing the shares and proceeds in escrow. Foster and Landry filed in Case No. 02-CV-510-C a motion for contempt, alleging that the Ohlwilers had ignored the court's authority to decide the matter. A hearing on the contempt motion was scheduled for the same time as the hearing on the Ohlwilers' declaratory judgment petition and the hearing on Foster and Landry's motion for interlocutory injunction.[1]

During the consolidated hearing, the document relied upon by Foster and Landry to prove that the Ohlwilers' shares were restricted was introduced in evidence. The first and second lines of its header were "Corporate Minutes" and "Resolutions August 17, 1990," respectively. The document then pertinently provided:

Whereas, the current stockholder [sic] only consist of Robert H. Ohlwiler and Linda M. Ohlwiler; and

Whereas, the above stockholders consider the ownership of Hidden Valley to be near and dear to each other, and not justifiable to be transferred, sold, inherited or otherwise

---

[1] The cases were before the same judge.

deserving to anyone else including but not limited to future spouses, relatives, advisors, or friends; with the exception of John Robert Ohlwiler, their son;

Now, therefor, be it resolved, that the following stipulations be agreed upon with respect to transfer of stock.

1.  Should any stockholder receive an offer to purchase any of their shares in the corporation all other stockholders will have the option to purchase the stock at the offered price within 90 days of the time the offer is presented to said stockholders. The corporation shall not accept the original offer until the 90 day waiting period, and no right to first refusal options have been exercised.

2.  . . . .

3.  It is the intention of Robert H. Ohlwiler and Linda M. Ohlwiler to will their stock in Hidden Valley Resorts, Inc. to each other at the time of this resolution, and must inform the other of any intention of change in this esprit de corps or in their respective wills to accommodate . . . considerations regarding the intentions of this resolution.

4.  This resolution shall become effective as of January 2, 1991.

Robert Ohlwiler testified at the hearing about what led to his drafting of the document. The company had previously been owned and operated as a sole proprietorship by him and his former wife, Linda. By the late 1980s, the couple had separated and were contemplating divorce. Each spouse had begun a new relationship, and each spouse wanted to guard against finding herself or himself in business with the other spouse's new companion. However, at that time, neither spouse could afford to purchase the other's interest. Therefore, to ensure their own control of the future ownership of the company, the couple first incorporated their company, effective January 2, 1991. Each spouse owned an equal number of shares. But then, Robert Ohlwiler recalled,

as we went further, we had other issues, so we never really — we never signed the document and — but I was trying to document our intentions at the time with the confusion of what if somebody — now, that we have separate shares, what if one person, you know, dies or whatever, where does that stock go? Those were the kinds of things we're dealing with.

Robert Ohlwiler testified that he had intended the document to be an agreement only between his former wife and himself; future shareholders had not been contemplated.

Other evidence at the hearing showed that the corporation later issued additional shares of stock. Linda Ohlwiler sold her shares back to the corporation, and various other individuals, including Foster and Landry, became shareholders. None of the shares contained any language restricting transfer.

With regard to the sale of the Ohlwilers' shares to the nonshareholders, Robert Ohlwiler testified that although a closing had occurred November 25, 2002, a contingency of the transaction was a court order declaring a right for the Ohlwilers to convey the shares to the nonshareholders.

After the hearing, the court issued verbatim orders in each of the two cases, ruling that the cited document,

> [at] best is a form of agreement between the original parties (Robert and Linda Ohlwiler). It may not even rise to the level as to a binding agreement between them, but the Court has been asked, among other things, to declare whether or not [the document] constitutes a right of first refusal in any subsequent shareholders to Robert H. and Linda Ohlwiler. In that regard, the document . . . does not constitute a first right of refusal in favor of such subsequent shareholders.

Having ruled against Foster and Landry and in favor of the Ohlwilers on the declaratory judgment issue, the court then denied Foster and Landry's motion for interlocutory injunction and their motion for contempt. Foster and Landry appeal from the orders entered in the two cases.[2]

1. Foster and Landry contend that the court erred in ruling that the shares were not restricted as they alleged.

(a) Foster and Landry assert that the cited document was a corporate resolution that establishes that the shares were so restricted. A corporate resolution is defined as "[f]ormal documentation

---

[2] The notice of appeal filed in each case named both cases. Thereafter, the cases were transferred together to this court, where they were docketed as one case. Although no order consolidating the cases was entered, both cases are directly appealable. OCGA § 5-6-34 (a) (1), (4), (d). Therefore, we will consider the claims of error concerning both cases. See *In the Interest of D. S. P.*, 233 Ga. App. 346 (504 SE2d 211) (1998) (direct appeal authorized if case involves a directly appealable judgment); see generally *In the Interest of C. M. L.*, 260 Ga. App. 502 (580 SE2d 276) (2003) (although appellant should have filed a notice of appeal for each case, in the interest of judicial economy, we will treat the notice as having been filed in each).

of action taken by board of directors of corporation."[3] Notwithstanding the fact that the words "corporate resolution" had been typed in the header, the document contains no indication that Robert and Linda Ohlwiler were acting as board members in connection with the creation of the document; nor does the document contain any indication that it was duly authenticated as a record of the corporation.[4] Under these circumstances, the cited document can have no legal effect as a corporate resolution. Moreover, even if the document was a valid and duly authenticated corporate resolution, Foster and Landry's contention would nonetheless fail because the language of the document does not require a ruling contrary to that of the trial court.[5]

(b) Foster and Landry assert that the document was "an agreement among shareholders" that restricted the transfer of shares as they alleged. The Georgia Business Corporation Code provides that "[t]he articles of incorporation, bylaws, an agreement among shareholders, or an agreement between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of the corporation."[6] It further requires that any transfer restriction either be placed conspicuously on the certificate or contained in the information statement required to be sent to shareholders pursuant to OCGA § 14-2-626.[7] "Unless so noted, a restriction is not enforceable against a person without knowledge of the restriction."[8]

Even assuming, without deciding, that the cited document was an "agreement among shareholders," we find no error in the trial court's conclusion that it did not restrict the shares as Foster and Landry alleged. Shareholder agreements are construed according to the principles of the law of contracts.[9]

> The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. Construction of a contract by the court involves three steps. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Secondly, if ambiguity does

---

[3] Black's Law Dictionary (6th ed. 1990).
[4] See generally OCGA § 14-2-151.
[5] See generally Division 1 (b), infra.
[6] OCGA § 14-2-627 (a).
[7] OCGA § 14-2-627 (b).
[8] Id.
[9] See generally *Rushing v. Gold Kist*, 256 Ga. App. 115, 117 (1) (567 SE2d 384) (2002); *Gwin v. Thunderbird Motor Hotels*, 216 Ga. 652, 658 (2) (119 SE2d 14) (1961).

> appear, the existence or nonexistence of an ambiguity is a question of law for the court. Finally, a . . . question arises [for the factfinder] only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction.[10]

A word or phrase is ambiguous if it is indistinct, or uncertain, or may be fairly understood in more ways than one.[11]

To support their allegation that the shares were restricted, Foster and Landry point to a statement in the document: "Should any stockholder receive an offer to purchase any of their shares in the corporation all other stockholders will have the option to purchase the stock at the offered price. . . ." They argue that the plural phrase "all other stockholders" must have contemplated additional, future stockholders, since the document was anticipated to go into effect at a time when there would have been only two stockholders.

Notwithstanding Foster and Landry's argument concerning a statement in isolation, when considering the document as a whole,[12] the cited language also could be considered indistinct and fairly understood as contemplating only those stockholders expressly named. As the language is ambiguous, the task of resolving the ambiguity fell upon the trial court as the factfinder.[13] It found the latter understanding applicable.

> A trial court's findings in a nonjury trial will not be set aside unless clearly erroneous. The "clearly erroneous" test is the same as the "any evidence" rule. If there is any evidence to support the findings of fact by a trial court sitting without a jury, then this Court must affirm the judgment.[14]

"This is true regardless of whether evidence also existed that may have supported appellants' position."[15]

The trial court's finding that the language cited by Foster and Landry contemplated only Robert Ohlwiler and his former wife was

---

[10] (Citations and punctuation omitted.) *Thomas v. B & I Lending*, 261 Ga. App. 39, 41 (1) (581 SE2d 631) (2003).

[11] Id.

[12] See *Atlanta Development v. Emerald Capital Investments*, 258 Ga. App. 472, 478 (574 SE2d 585) (2002) (entire contract should be read in arriving at the construction of any part).

[13] See id. at 479 (disagreement as to the intent of the parties is an evidentiary matter to be resolved by factfinder).

[14] (Footnotes omitted.) *Peace v. Dominy Holdings*, 251 Ga. App. 654, 656 (1) (554 SE2d 314) (2001).

[15] (Citations and punctuation omitted.) *Netherland v. Nelson*, 261 Ga. App. 765 (583 SE2d 478) (2003).

supported by other parts of the document. For example, a "whereas" clause explained that the document was written because the former spouses recognized that the ownership of Hidden Valley was "near and dear to each other" and that neither wanted any interest in the business conveyed to anyone other than their son, without the other's prior rejection of that interest. In addition, Division 3, concerning the distribution of shares upon the death of a shareholder, specifically named only Robert and Linda Ohlwiler. The trial court's finding that the shares were not restricted as alleged by Foster and Landry was also supported by Robert Ohlwiler's testimony concerning the circumstances that led to his typing the document, which testimony was consistent with clauses included in the document.

Furthermore, there was no evidence that the shares or the information statement pursuant to OCGA § 14-2-626 contained a transfer restriction. And Robert Ohlwiler testified that he knew of no restrictions applicable to Foster or Landry.

Because the trial court's finding that the document did not contemplate future shareholders is not wholly without supporting evidence, this court will not set it aside.[16] Accordingly, Foster and Landry's contention that the court erred in ruling that the shares were not restricted fails.

2. Foster and Landry contend that Case No. 02-CV-523-C was not an appropriate case in which to grant declaratory relief, asserting that the Ohlwilers had already proceeded with the sale and thus had no claim of uncertainty as to any future action, but sought mere confirmation of what they had already done. However, we need not reach this issue, as it is rendered moot by Division 1 of this opinion.

3. Finally, Foster and Landry contend that the trial court erred by denying their contempt motion without conducting a hearing. This contention is belied by the record, which reveals that a hearing on the motion was scheduled. At the scheduled (consolidated) hearing, the court announced that in addition to hearing the Ohlwilers' petition filed in Case No. 02-CV-523-C, Foster and Landry's motion for interlocutory injunction and motion for contempt filed in Case No. 02-CV-510-C would also be heard. Foster and Landry were present, pro se. Neither objected to the announcement, and Foster expressly agreed that the motions were scheduled to be heard at that time.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 18, 2004.

---

[16] See id.

*Lyle V. Anderson*, for appellants.
*Edward W. Gadrix, Jr.*, for appellees.