**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

October 15, 2024

# In the Court of Appeals of Georgia

A24A1534, A24A1535. LIGGINS et al. v. PARKWOOD LIVING, LLC; and vice versa.

BROWN, Judge.

In this dispute involving a contract for the purchase of real property, the trial court granted summary judgment to Parkwood Living, LLC ("Parkwood"), on its claim for breach of contract[1] against Joyce A. Liggins and Daphne G. Smith ("the defendants").[2] Following a bench trial, the trial court also entered a final judgment in favor of Parkwood, awarding $95,000 in damages for breach of contract, but denying

---

[1] The trial court denied summary judgment to Parkwood on its claim for specific performance, but Parkwood does not challenge this ruling on appeal.

[2] As detailed in amended affidavits filed after Parkwood filed its motion for summary judgment, the defendants are elderly sisters who were raised on the property at issue; Parkwood contacted them and met with one of the defendants at her place of employment because it was interested in purchasing the property.

Parkwood's claim for attorney fees. In Case No. 24A1534, the defendants appeal the grant of summary judgment and the damages award, and in Case No. A24A1535, Parkwood cross-appeals the denial of its claim for attorney fees. For the reasons that follow, we reverse in Case No. A24A1524, and dismiss as moot Parkwood's cross-appeal in Case No. A24A1535.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Greenberg Farrow Architecture v. JMLS 1422*, 339 Ga. App. 325, 326 (791 SE2d 635) (2016). So viewed, the evidence shows that on March 13, 2019, the defendants entered into a purchase and sale agreement with Parkwood to sell two lots in DeKalb County located on Clay Street. The agreement provided that the closing would take place on June 13, 2019, but did not specify the time or address for the closing.[3] The agreement provided:

---

[3] The agreement listed a "Closing Attorney/Law Firm" as "Harlan and Associates," but failed to provide an address for the closing or designate that the closing would occur at "Harlan and Associates." "EXHIBIT B" to the agreement, titled "CLOSING ATTORNEY ACTING AS HOLDER OF EARNEST MONEY," listed the address of the "Closing Attorney" who "shall be the Holder of the earnest money conditioned upon the Closing Attorney timely agreeing to serve as Holder."

Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement.

It also stated that "[t]ime is of the essence," and included eight special stipulations, which provided that the special stipulations "if conflicting with any . . . preceding paragraph . . . shall control." One of the stipulations provided: "For good and valuable consideration, we, being all of the heirs of the Decedent, hereby agree to all of the terms of this contract for the purchase and sale of the Property (the "Contract") and agree that this Contract shall be binding with respect to each of our shares of the Property in the Decedent's Estate." Another provided:

If the Decedent had a Will, then the Closing shall occur within 15 business days of the issuance of Letters Testamentary to the Executor by the county Probate Court. If the Decedent did not have a Will, then the Closing shall occur within 15 business days of the issuance of Letters of Administration to the Estate Administrator, or if leave to sell is required

---

But, the exhibit provides no details about a closing.

by the Probate Court, then the Closing shall occur within 15 business days of issuance of an Order from the Court granting leave to sell. If leave to sell is required by the Probate Court, the administrator shall diligently pursue permission to sell from the Probate Court.

On April 1, 2022, Parkwood filed a complaint against the defendants for specific performance, breach of contract, and attorney fees, alleging that the defendants refused to close the sale of the property. The defendants filed individual pro se answers, denying the essential claims of the complaint and asserting that Parkwood had acted in bad faith; that each defendant owned only 1/4 of the property; that they could not sell the entire property; that Parkwood failed to complete the probate matter as promised; and that the property could not be sold without all owners. Prior to any discovery, Parkwood moved for summary judgment, alleging that the defendants never denied signing the agreement and represented (a) that they held clear title to the property; (b) that the sale was supposed to have occurred on June 13, 2019; and (c) that the reason the sale did not occur is because the defendants only owned half of the property. In support of its motion, Parkwood attached a quitclaim deed, showing that Robert Pinkney and Cora Pinkney conveyed the property to "William E. Pinkney, Sr., Robert G. Pinkney, Joyce A. Liggins, and Daphne G. Smith" on October 6, 2004.

Parkwood also attached the affidavit of its owner, averring that the parties entered into the agreement on March 13, 2019; that the agreement provided for the purchase price of $430,000; and that Parkwood has stood ready, willing, and able to move forward with the purchase of the property. The defendants did not respond to the motion.

On July 18, 2023, the trial court issued a notice of hearing on the motion for summary judgment for August 9, 2023. The notice was sent to Parkwood's counsel via eFile, and to defendant Liggins via regular mail, but there is no indication that the notice was sent to defendant Smith. Following a hearing, the trial court granted summary judgment in favor of Parkwood on its breach of contract claim, concluding that the defendants had "contracted with [Parkwood] both clearly and unambiguously" and that the agreement was legally valid; denied summary judgment on the specific performance claim; and reserved the issue of damages and attorney fees for a final hearing. In its order, the trial court indicated that the defendants "received timely notice of [the] hearing through the Odyssey eFile Georgia system, but neither party was present."

After the trial court issued its order, an attorney for the defendants filed an entry of appearance, a motion for reconsideration of the summary judgment ruling, and an amended answer and counterclaims for breach of contract, breach of fiduciary duty,

fraud, elder abuse, and punitive damages. The defendants each filed affidavits in support of the motion for reconsideration, averring that their two brothers — one of whom was recently deceased and the other who was resistant to selling — owned the other half of the property and that Parkwood offered to handle the probate process related to the deceased brother's estate and negotiations with the resisting brother, but that the attorney Parkwood procured to help never filed the letters of administration, and that Parkwood "defrauded [the defendants], lied to [them], promised to help [them], and . . . never did but then, years later they turn[ed] around and sued [the defendants]." E-mails attached to the affidavits showed that Parkwood planned to close once "title is clear and the family litigation is complete," and that it was in communication with the attorney working on the probate issue.

Following a bench trial, the trial court denied the defendants' motion for reconsideration and entered a final judgment in favor of Parkwood in the amount of $95,000 for the defendants' breach of contract. The trial court also denied Parkwood's claim for attorney fees under the contract and denied the defendants' counterclaims on the ground that the defendants were required under OCGA § 9-11-13 (f) to obtain leave of court prior to asserting their counterclaims. In Case No. A24A1534, the defendants appeal the grant of summary judgment to Parkwood on its breach of

6

contract claim and the award of damages, and in Case No. A24A1535, Parkwood cross-appeals the denial of attorney fees.

*Case No. A24A1534*

1. Although the defendants have not enumerated error in this respect, we note as an initial matter that even though the trial court indicated in its order that the defendants "received timely notice of [the] hearing through the Odyssey eFile Georgia system," the trial court's notice of hearing was only served on Parkwood's counsel via eFile. As reflected in the record, the notice was sent to defendant Liggins via U. S. mail and never served on defendant Smith.

Under OCGA § 9-11-6 (d), notice of a hearing must be served on a party "not later than five days before the time specified for the hearing[.]" Service of the notice of a hearing pursuant to OCGA § 9-11-6 (d) is governed by OCGA § 9-11-5 (b), which provides that "[s]ervice . . . shall be made by delivering a copy to the person to be served or by mailing it to the person to be served at the person's last known address[.]" See *Fiffee v. Jiggetts*, 353 Ga. App. 730, 734 (2) (839 SE2d 224) (2020). In this case, Smith's address was listed on her pro se answer. "Compliance with the notice requirement of OCGA § 9-11-5 (b) is mandatory, not discretionary." (Citation and punctuation omitted.) Id. at 735 (2). And, "[a]n order that is based on a hearing

7

and entered against a party without notice to that party of the hearing is subject to a motion to set aside on the ground of a non-amendable defect where the lack of notice appears on the face of the record." (Citations and punctuation omitted.) Id. Further, "[w]here the face of the record shows that a party failed to receive notice of a hearing in the form contemplated by OCGA §§ 9-11-5 (b) and 9-11-6 (d), the failure to provide proper notice constitutes a non[-]amendable defect that can justify the setting aside of the judgment under OCGA § 9-11-60 (d) (3)." Id. at 736 (2).

We are troubled by the fact that the trial court held a hearing after which it entered summary judgment in favor of a plaintiff against two pro se defendants, where the record reflects that one of the defendants did not receive proper notice of the hearing; neither defendant appeared at the hearing; and the trial court incorrectly indicated in its order that both defendants received notice via the eFile system. Regardless, as discussed below, the trial court erred in granting the motion for summary judgment.

2. The defendants contend that the trial court erred in granting summary judgment to Parkwood on its breach of contract claim. We agree for several reasons.

(a) First, we conclude that while Parkwood proved the content of the agreement in its motion for summary judgment and attached documents, it failed to prove the

8

alleged breach. In its unverified complaint, Parkwood alleged that the defendants breached the agreement, but it offered no evidence of that breach; it offered no evidence that the defendants did not have marketable title or that the defendants refused to close at an unknown time and address.[4] See *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988) ("[u]nsworn allegations in pleadings that have not been admitted by the opposing party are not evidence for purposes of summary judgment resolution").

> The elements of a breach of contract claim are breach and resultant damages to a party with the right to complain about the breach. A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible.

---

[4] We note that a transcript of the summary judgment hearing was not included in the record on appeal. Moreover, in its order granting summary judgment, there is no indication that the trial court considered any other evidence outside of the pleadings or the record, or that any evidence was admitted during the hearing for consideration by the trial court. Additionally, the trial court's order makes no findings with regard to the timing/address of the closing. Compare *Ga. Recovery v. Danley*, 215 Ga. App. 236, 238 (2) (450 SE2d 263) (1994) (trial court's order reflected that evidence was presented at summary judgment hearing and that trial court considered all the evidence in front of it prior to granting summary judgment).

(Citation and punctuation omitted.) *Miller v. Tate*, 346 Ga. App. 315, 317 (1) (814 SE2d 430) (2018), overruled on other grounds, *Hanham v. Access Mgmt. Group*, 305 Ga. 414, 418 (2) (825 SE2d 217) (2019). As Parkwood failed to present evidence on summary judgment that the defendants failed to perform, it did not prove an essential element of its claim for breach of contract and the trial court erred in granting summary judgment in its favor on that claim. Regardless, even if Parkwood had offered some evidence of breach, the trial court nonetheless erred for two additional reasons.

(b) One, the language of the agreement at issue is open to more than one interpretation and is ambiguous.

> The interpretation of a contract is a question of law, unless the contract language presents an ambiguity that cannot be resolved by the rules of construction. Likewise, the existence or nonexistence of an ambiguity is a question of law for the court. When reviewing a trial court's determination of legal issues, we consider such questions de novo and owe no deference to a trial court's legal analysis.

(Citations and punctuation omitted.) *AMAC Two v. Web, Ltd.*, 370 Ga. App. 119, 120 (1) (894 SE2d 414) (2023).

> The cardinal rule of contract construction is to ascertain the intention of the parties. OCGA § 13-2-3. Contract construction is a three-step process. First, if no ambiguity appears, the trial court enforces the

contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction. A contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof.

(Citation and punctuation omitted.) *Boland v. Ga. Eye Institute*, 235 Ga. App. 492, 494 (1) (509 SE2d 342) (1998). "An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." (Citation and punctuation omitted.) *Greenberg Farrow*, 339 Ga. App. at 329 (1). See also *AMAC*, 370 Ga. App. at 121 (1) ("an ambiguity exists when a contract contains an uncertain meaning, is duplicitous, and indistinct, or when a word or phrase may be fairly understood in more than one way") (citations and punctuation omitted). Where an ambiguity exists, "the court may look outside the written terms of the contract and

consider all the surrounding circumstances to determine the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous." (Citation and punctuation omitted.) *Greenberg Farrow*, 339 Ga. App. at 329 (1).

The special stipulations, all of which were incorporated into the agreement and controlling, identified "the Decedent" and "the Decedent's Estate" and also provided certain conditions for closing dependent on "the Decedent" and the estate of "the Decedent," but "the Decedent" is not defined or identified in the agreement, and when the parties intended to close is entirely unclear. See, e.g., *Barrett v. Britt*, 319 Ga. App. 118, 122 (736 SE2d 148) (2012); *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 478 (1) (574 SE2d 585) (2002). "[T]he whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). See also *Barrett*, 319 Ga. App. at 122. Because the agreement in this case is ambiguous, and the ambiguities cannot be resolved by the court's application of the rules of statutory construction, the trial court erred in granting summary judgment on Parkwood's breach of contract claim. What the parties intended by the special stipulations is an issue of fact to be determined by a jury. See *AMAC*, 370 Ga. App. at 127 (1) ("[w]hen ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury") (citations and

12

punctuation omitted). See also *Barrett*, 319 Ga. App. at 123; *Atlanta Dev.,* 258 Ga. App. at 478-479 (1).

(c) Two, "[w]here, as here, a plaintiff moves for summary judgment, it has the burden of establishing the absence or non-existence of any defense raised by the defendant." (Citation and punctuation omitted.) *Allen v. CFYC Constr.*, 354 Ga. App. 890, 894 (2) (842 SE2d 297) (2020). See also *The Plantation at Bay Creek Homeowners Assn. v. Glasier*, 349 Ga. App. 203, 204 (825 SE2d 542) (2019). In this case, the defendants asserted in their pro se answers the defense of impossibility on the grounds that the agreement failed to specify the time or place for closing and they each owned only 1/4 of the property. See *Razavi v. Emily*, 371 Ga. App. 878, 882 (3) (903 SE2d 153) (2024) ("[i]t is well settled that our appellate courts look to the substance of a pleading, not merely its nomenclature"). "[I]mpossibility of performance is a defense to the enforcement of a contract." *Allen*, 354 Ga. App. at 894 (2). Because Parkwood has failed to establish the non-existence of the defendants' defense of impossibility as a matter of law, the trial court erred in granting summary judgment on its claim for breach of contract. See id. at 895 (2).

3. The defendants contend that the trial court erred in awarding damages to Parkwood on its breach of contract claim. Because genuine issues of material fact

remain in this case on Parkwood's claim for breach of contract, we not only reverse the grant of summary judgment, but we also reverse the award of damages for breach of contract. See *Moreno v. Smith*, 299 Ga. 443, 446 (2) (788 SE2d 349) (2016).

*Case No. A24A1535*

4. Our decision in Case No. A24A1534, reversing the grant of summary judgment to Parkwood on its claim for breach of contract, renders moot Parkwood's cross-appeal in Case No. A24A1535, challenging the trial court's denial of Parkwood's claim for attorney fees. See, e.g., *City of Dalton v. Smith*, 158 Ga. App. 356, 359 (2) (280 SE2d 138) (1981).

*Judgment in Case No. A24A1534 reversed. Appeal in Case No. A24A1535 dismissed. Dillard, P. J., and Padgett, J., concur.*